543 A.2d 398

**Alfred P. VOGEL**

v.

**STATE of Maryland**

**No. 1496, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

July 8, 1988.

Certiorari Granted Oct. 13, 1988.

**58**

Nancy S. Forster, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Barry A. Hamilton, Asst. State's Atty. for Montgomery County, Rockville (J. Joseph Curran, Jr., Atty. Gen., Norman L. Smith, Asst. Atty. Gen., Baltimore, and Andrew L. Sonner, State's Attorney for Montgomery County, Rockville, on the brief), for appellee.

Argued before MOYLAN, BISHOP and POLLITT, JJ.

MOYLAN, Judge.

The appellant, Alfred P. Vogel, was convicted by a Montgomery County jury, presided over by Judge Calvin R. Sanders, of both 1) child abuse and 2) a third-degree sexual offense. He was sentenced to a term of five years imprisonment for the child abuse, with all but six months suspended. He was sentenced to a consecutive term of five years for the third-degree sexual offense, the execution of which was suspended. Upon this appeal, the appellant raises the following six contentions:

1. That the evidence was not legally sufficient to support the convictions;

2. That under double jeopardy principles, he should not have been convicted separately and sentenced separately for both the child abuse and the third-degree sexual offense;

3. That the victim was erroneously permitted to testify about other crimes allegedly committed upon the victim by the appellant;

4. That Judge Sanders erroneously permitted the cross-examination of the appellant's wife to range beyond the scope of direct examination;

5. That Judge Sanders erroneously admitted testimony from the victim's mother on redirect examination; and

6. That Judge Sanders relied upon an impermissible consideration in sentencing the appellant.

■ There is no merit to the appellant's claim with respect to legal insufficiency. The child victim testified that on June 22, 1985, prior to driving to Milroy, Pennsylvania, the appellant performed an act of fellatio on the victim. There is no question but that the victim's testimony was legally sufficient to support the verdict. The appellant's sole reliance is upon the relentlessly overread case of *Kucharczyk v. State*, 235 Md. 334, 201 A.2d 683 (1964). *Kucharczyk* does not remotely stand for the proposition for which it is so regularly cited—that marginal or even impeachable testimony is entitled to no weight. As we pointed out in *Bailey v. State*, 16 Md.App. 83, 93–94, 294 A.2d 123 (1972):

"Trial testimony frequently is replete with contradictions and inconsistencies, major and minor. It is the quintessential approach of the Anglo–American trial system to rely fundamentally upon cross-examination, upon the introduction of prior inconsistent statements, upon impeachment devices generally, upon sequestration, upon oral argument to ferret out and to highlight such contradictions if and when they exist.... The extreme and peculiar facts of *Kucharczyk* produced a limited departure from that fundamental approach. Some appreciation of the limited utility of the so-called *Kucharczyk* doctrine may be gathered from the fact that it was never applied pre-*Kucharczyk* in a criminal appeal and it has never been applied post-*Kucharczyk* in a criminal appeal."

Cognizant that *Kucharczyk* has been drained of its spurious vitality, the appellant cleverly avoided mention of it even while urging its mischief upon us, citing as authority only a minimally apposite civil case, *Kaufman v. Baltimore*

*Transit Company,* 197 Md. 141, 78 A.2d 464 (1951), that had been relied upon in part by *Kucharczyk. Kucharczyk* is no more persuasive when travelling incognito than it is when flying its true colors. The evidence, in short, was legally sufficient to support the convictions.

■ We think the appellant's second argument is well-taken. For present purposes, we will look to the conviction for child abuse as the flagship offense and then examine whether the third-degree sexual offense is or is not a lesser included offense for purposes of possible merger. Md.Ann. Code, Art. 27, § 35A(b) (1957, 1987 Repl.Vol.) provides:

> "A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a child who causes abuse to the child is guilty of a felony and on conviction is subject to imprisonment in the penitentiary not exceeding 15 years."

The pertinent element for present purposes is that of causing "abuse to the child." Subsection (a)(2), in turn, provides, in the disjunctive, two forms of "abuse." The first, not here pertinent, is the causing of physical injury to the child through cruel or inhumane treatment. The second form of abuse, the only one remotely apposite to this case, is "sexual abuse of a child, whether physical injuries are sustained or not." The statute then goes on to define "sexual abuse" as including, but not limited to, a "sexual offense in any degree."

The only theory of abuse put forward in this case was "sexual abuse" in the form of a sexual offense, to wit, the act of fellatio perpetrated by the appellant upon the child. Although the crime of child abuse might, in the abstract, be consummated by other modalities not involving the commission of a sexual offense, in this case the alternative form of the offense that was chosen and pursued did include that element. We are not talking about the question, normally

involved when considering the *Blockburger*[1] "same of-fense" test, of different evidence by which to prove a constant element, but rather of the very selection of the set of elements to be proved, the initial choice that has to be made when an offense comes in several alternative forms. The recent decision of the Court of Appeals in the case of *Nightingale and Myers v. State*, 312 Md. 699, 542 A.2d 373 (1988), is dispositive in this regard. As Judge Adkins there observed:

> "[E]ach jury could have found the defendant before it guilty of child abuse based solely on evidence of a sexual offense in some degree. If that were done, then the sexual offense became, in effect, a lesser included offense of sexual child abuse, and under the authorities we have cited, the offenses are the same for double jeopardy purposes. Indeed, with respect to criminal information No. 7319 in Myers's case, the jury must have found a sexual offense as the basis of the child abuse verdict, because that information involved but a single incident of sexual contact."

*See also Snowden v. State*, 75 Md.App. 404, 541 A.2d 998 (1988), dissenting opinion by Moylan, J.

A critical distinction must be made between 1) the choice of elements to pinpoint the particular form of a crime that comes in various forms and 2) the choice of evidence to prove a given element of a crime. The former choice does not involve the *Blockburger* test; it is a choice that has to be made before the *Blockburger* test is even applied. The latter choice does involve *Blockburger* and requires us to distinguish between "required evidence" and "actual evi-dence." The distinction between "required evidence" and "actual evidence" is conceptually an elusive one and can probably best be pinned down by the use of example. When considering, for instance, the possible merger of 1)

---

[1] *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), dealing with when two related offenses are "the same offense" for double jeopardy purposes.

simple assault into 2) assault with intent to murder, every element necessary to prove simple assault is also a required element for proving assault with intent to murder. Simple assault is, therefore, a lesser included crime which is merged or subsumed into the greater inclusive crime of assault with intent to murder. The same relationship holds true with respect to robbery and its necessarily included larceny and with respect to a consummated burglary and its necessarily included attempted burglary. Thus, assault is a "required element" of or "required evidence" of assault with intent to murder; larceny is a "required element" of or "required evidence" of robbery.

By contrast, the use of a handgun is not a "required element" or part of the "required evidence" of armed robbery. Armed robbery requires the use of a dangerous and deadly weapon. In a given case, that dangerous and deadly weapon may be a handgun; it may just as easily, however, be a rifle or a dagger or a set of brass knuckles. Thus, although the "actual evidence" of a dangerous and deadly weapon in a given case may be proof of a handgun, a handgun conviction will not merge into an armed robbery conviction because it was not an indispensable or "required element." It is not itself an element at all; it is but evidence of some other element. No variation is permitted with respect to the element itself; the requirement of the use of a dangerous and deadly weapon is a constant. Although there may be a shift from one evidentiary fact (handgun) to another evidentiary fact (dagger) to prove the element, there is no shift with respect to the legal element itself.

A source of inevitable confusion is that with respect to some crimes, although by no means all crimes, there is a shift or a variation with respect to legal elements. We tend uncritically to equate one shift with another. The necessary shifting or selection of elements within a multiform crime, however, is by no means the same as a shift or variation with respect to the evidence by which to prove an unshifting legal element. Although there are present the

deceptive common denominators of movement and choice and variation, all shifts within the course of a criminal prosecution are not legally the same. Some crimes are what Judge Adkins referred to in *Nightingale and Myers v. State, supra,* as "multi-purpose" crimes. What is involved is more than different ways of doing the same thing. That is a matter of fact. It is rather the case that even fundamentally different things may nonetheless constitute the same crime. That is a matter of law. When a criminal offense comes in several different kinds, one does not even begin to catalogue the required elements until one has selected the kind of the offense applicable in a given case. "When a multi-purpose criminal statute is involved, we refine it by looking at the alternative elements relevant to the case at hand." *Id.*

Illustrative of a crime that comes in fundamentally different kinds is murder in the first degree. It may, along with several other possibilities, involve either a premeditated killing or the perpetration or attempted perpetration of certain statutorily designated felonies. In *Newton v. State,* 280 Md. 260, 373 A.2d 262 (1977), Judge Eldridge made an extensive analysis of when a predicate felony is necessarily merged into first-degree murder and when it is not. What that analysis revealed is that one cannot, for merger purposes, measure a robbery, for instance, against first-degree murder in the abstract. It would never merge, for first-degree murder might be of the premeditated killing variety. Nor may one measure a robbery even against a felony-murder in the abstract, for the felony-murder might have occurred in the course of a burglary or a rape or an arson. Nor may one even measure a consummated robbery against a felony-murder involving a robbery episode in the abstract, for the felony-murder may have been the result of an attempted robbery that failed. It is most definitely the case, however, that a robbery does merge into a first-degree felony-murder based upon a consummated robbery. As *Newton* established, where a crime may be constructed out of alternative elements, one must make all necessary selec-

tions of appropriate elements before undertaking the "required elements" or "required evidence" comparison under *Blockburger.* Premeditated killing and robbery are different legal elements, not different evidence of the same element.

In the case at bar, the complexity is twice compounded. Both child abuse and a sexual offense in the third degree are generic or "umbrella" crimes that encompass several specific forms or kinds. Child abuse may consist of either:

> "(i) The sustaining of physical injury by a child as a result of cruel or inhumane treatment or as a result of a malicious act by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child under circumstances that indicate that the child's health or welfare is harmed or threatened thereby; *or*
>
> (ii) Sexual abuse of a child, whether physical injuries are sustained or not." (Emphasis supplied).

Art. 27, § 35A(a)(2). "Sexual abuse" is, in turn, defined as including, but not limited to:

> "1. Incest, rape, or *sexual offense in any degree;*
>
> 2. Sodomy; and
>
> 3. Unnatural or perverted sexual practices." [2] (Emphasis supplied).

Art. 27, § 35A(a)(4)(ii).

It is clear that a sexual offense is subsumed within the "sexual abuse" species of the genus "child abuse," but not within the "physical injury" species, which involves no necessary sexual aspect.[3] Before approaching the merger

---

**2.** The perhaps overly cautious cataloging of forms of "sexual abuse" appears to contain some redundancy, in that, when perpetrated by a parent or other person having care or custody upon a child, both sodomy and unnatural or perverted sexual practices, listed in subsections 2 and 3, would almost certainly constitute sexual offenses within the contemplation of subsection 1.

**3.** For that variety of child abuse, see *Anderson v. State,* 61 Md.App. 436, 487 A.2d 294 (1985).

question, we determine, as the Court of Appeals determined in *Nightingale and Myers v. State, supra,* that the particular species of "child abuse" involved in this case is "sexual child abuse":

"So as far as child abuse is concerned, we can put aside any thought that these cases involve any aspect of child abuse based on physical harm or cruel physical treatment. At both Nightingale's and Myers's trials, the State's theory, as presented in opening statement, closing argument, and the court's instructions, was sexual child abuse."

Although it is immaterial for present purposes, since any form of a sexual offense is subsumed as a lesser included element within the greater, inclusive crime of sexual child abuse, it is also clear that a third-degree sexual offense is another of those crimes described by *Nightingale and Myers v. State, supra,* as "a multi-purpose criminal statute." In analyzing the structurally analogous provisions of Article 27, § 464C, dealing with a fourth-degree sexual offense, the Court of Appeals in *State v. Boozer,* 304 Md. 98, 104, 497 A.2d 1129 (1985), speaking through Judge McAuliffe, pointed out:

"Initially, it is clear that many of the various acts of criminal conduct grouped together in § 464C historically and customarily have been considered sufficiently separate and distinct from each other to justify separate punishment, even though occurring in close temporal proximity and within the same criminal episode."

*Nightingale and Myers v. State, supra,* summarized *State v. Boozer* as recognizing "that Art. 27, § 464C was not a statute that created but a single offense; instead, it proscribes several different types of conduct, which may be treated as separate statutory offenses for double jeopardy purposes. The same is clearly true of the other sexual offense statutes, and of the child abuse statute."

Section 464B, dealing with a third-degree sexual offense, prohibits three related but different forms of criminal con-

duct. It provides that a person is guilty of a sexual offense in the third degree "if the person engages in sexual contact:

"(1) With another person against the will and without the consent of the other person and:

[There are here provided four alternative aggravating factors, any one of which would suffice to establish this form of the crime]

(2) With another person who is mentally defective, mentally incapacitated, or physically helpless, and the person knows or should reasonably know the other person is mentally defective, mentally incapacitated, or physically helpless; or

(3) With another person who is under 14 years of age and the person performing the sexual contact is four or more years older than the victim."

It is clearly the third of these varieties of third-degree sexual offense which was before the trial court. The procedure to be followed was spelled out by *Nightingale and Myers v. State, supra,* as it quoted with approval from *Pandelli v. United States,* 635 F.2d 533, 537 (6th Cir.1980):

"[The Court] must construct from the alternative elements within the statute the particular formulation that applies to the case at hand. It should rid the statute of alternative elements that do not apply. It must, in other words, treat a multi-purpose statute written in the alternative as it would treat separate statutes. The theory behind the analysis is that a criminal statute written in the alternative creates a separate offense for each alternative and should therefore be treated for double jeopardy purposes as separate statutes would."

Applying that analysis to the two crimes being considered for possible merger, the particular form of third-degree sexual offense in this case contained the elements that the appellant:

1. Engage in sexual contact (without any discussion being necessary, it is undisputed that an act of fellatio

would qualify as a sexual contact [4]),

2.  With another person who is under 14 years of age, and

3.  The person performing the sexual contact be four or more years older than the victim.

Those elements in the aggregate constituted the third-degree sexual offense for which the appellant was convicted. That entire offense was, in turn, one of the necessary elements of child abuse, which consisted in this case of:

1) Having temporary care, custody or responsibility for the supervision of a child, and

2) Sexually abusing the child by committing upon the child a sexual offense in the third degree.

In this case, the sexual offense in the third-degree was a required element of the child abuse and the conviction for the sexual offense should, therefore, have merged into the conviction for child abuse.

■ We do not agree with the appellant's third contention. He claims that the victim should not have been permitted to testify as to "other crimes allegedly committed by appellant." In this case, the testimony established a pattern of behavior by the appellant with this victim and was highly relevant. Two years before the incident occurred, Mrs. Delores Payne, the mother of young Richard, sought the services of the Big Brother Association for Richard at a time when Richard's father had become too ill with cancer to participate in his son's life. It was the appellant who became Richard's Big Brother. He visited Richard at home regularly both during the week and on weekends. He befriended the entire family and was very supportive when Richard's father died. When the Payne family decided to move back to Mrs. Payne's family home in Milroy, Pennsylvania, it was the appellant who assisted

---

**4.** That fellatio would qualify for the more strictly defined term "sexual act" would not preclude it from also qualifying under the more broadly defined term "sexual contact."

them by renting a U–Haul truck on his own and loading the truck with all of the family's belongings. Mrs. Payne and other family members went ahead on June 21, 1985. The appellant was to follow in the U–Haul truck the next day along with young Richard. It was just prior to leaving for Pennsylvania on that day that the criminal incident occurred upon which the convictions were based in this case.

In describing the entire relationship and how a pattern of sexual abuse slowly evolved, Richard was permitted to testify that on several earlier occasions the appellant had taken him on overnight trips to such places as King's Dominion; to Thurmont, Maryland; and once to New York City. Without any variation in the pattern, the appellant on each trip undressed Richard, placed his mouth on Richard's penis, and "went up and down."

Testimony as to a single sexual incident, occurring out of the blue on June 22, 1985, might well have struck the jury as unbelievably incongruous, particularly if it followed two years of apparently meticulously proper behavior on the part of the appellant. One of the recognized exceptions to the "other crimes" exclusionary rule is where the evidence shows a passion or propensity for illicit sexual relations with the particular person who is the victim of the charged offense. *Berger v. State*, 179 Md. 410, 414, 20 A.2d 146 (1941); *State v. Werner*, 302 Md. 550, 557, 489 A.2d 1119 (1985). We see no error in this case.

■ The appellant called as one of his witnesses his wife, who testified on direct examination about the appellant's relationship with the victim on various occasions when the victim had been a guest in the appellant's house. She testified that no abuse of any sort occurred on those occasions. On cross-examination, the prosecutor probed fully the appellant's decision to become a Big Brother, the appellant's out-of-town trips with Richard, the frequency of the appellant's visits with Richard, and the maintaining of contact with Richard even after the move to Pennsylvania. We

see nothing improper about the scope of the cross-examination.

■ Similarly, we deem Judge Sanders's handling of the redirect examination of Mrs. Payne, the victim's mother, to be within that broad range of discretion wisely vested in the trial judge. Indeed, the cross-examination of Mrs. Payne had developed the point that Mrs. Payne apparently lied to her son as she attempted to force him to reveal what his conduct with the appellant had been. Standing alone, that admission could have been tactically damaging. On redirect examination, the prosecutor rehabilitated Mrs. Payne's testimony by eliciting the explanation that she deliberately "bluffed" when confronting her son in order to break down his resistance. We see nothing improper.

■ The appellant's contention about Judge Sanders's relying upon an improper consideration at sentencing falls with the fall of its factual predicate. Judge Sanders did not sentence the appellant more harshly because the appellant continued to maintain his innocence. Judge Sanders was rather thinking aloud about the efficacy of a sentence based on deterrence versus a sentence based on rehabilitation. He made the comment that the appellant, "in a state of denial," was not a ripe candidate for receiving rehabilitative help. The judge's comments were:

"The Court: So, punishment is not really what the court is looking for in this case, and the quandary I find myself in is the feeling that you need help, and Mrs. Payne recognizes that you need help, and those who have evaluated you feel that you need help; *the problem is, Mr. Vogel, you do not believe that you need help.*

Now, I recognized that you, yourself, are in somewhat of a quandary, you cannot say you need help or even accept it without acknowledging that you have committed these acts or that there is a problem. I don't know how you can resolve that issue. You have the right of appeal of this case which may be exercised, and *you have to this morning maintained your innocence of these charges;*

*obviously, I respect your right to do that, but at the same time it means that they have concluded that you are in a state of denial and while you are in that state there is no help that is available to you that can be in any way effective. There must first be a recognition of a problem before there can be any beginning to resolve the problem, and you're simply not of a mind to do that.*

Now, *assuming, as the court does, that you are not in a position to accept help alone at this time, deterrence, then, seems to me is the appropriate consideration,* and I do not concern myself with deterrence to others, but more importantly it's deterrence to you, *and the court feels that under these circumstances that there has to be imposed a sentence* which will hopefully put you in a position where you will accept help once it becomes finalized that that would be your only alternative.

I do not think that you are a danger to the community in the general sense, but I do think that under your present state that you are a danger when in frequent contact with young boys. I have to conclude that from all that has happened." (Emphasis supplied).

Again, we see nothing except a thoughtful, a concerned, and a highly commendable consideration of all pertinent sentencing factors.

JUDGMENT OF CONVICTION FOR CHILD ABUSE AFFIRMED; JUDGMENT OF CONVICTION FOR A SEXUAL OFFENSE IN THE THIRD DEGREE VACATED AND MERGED INTO CHILD ABUSE CONVICTION; COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANT AND MONTGOMERY COUNTY.