554 A.2d 1231

**Alfred P. VOGEL**

v.

**STATE of Maryland.**

**No. 87, Sept. Term. 1988.**

Court of Appeals of Maryland.

March 29, 1989.

Nancy S. Forster, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for petitioner.

Barry A. Hamilton, Sp. Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Norman L. Smith, Asst. Atty. Gen., all on brief), Baltimore, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired) Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

Whether a jury in the Circuit Court for Montgomery County found Alfred P. Vogel guilty of criminal conduct turned on the credibility of a lad 14 years of age concerning an incident which occurred two years before. The jury obviously believed the child. It convicted Vogel of all of the crimes presented to it—child abuse,[1] a sexual offense in the third degree,[2] and battery.[3] Vogel was sentenced to five

1. Maryland Code (1957, 1987 Repl.Vol.), Art. 27 § 35A(b) makes it a felony for "[a] parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a child" to cause "abuse to the child...." Among the definitions of "abuse" is "[s]exual abuse of a child, whether physical injuries are sustained or not." Subsection (a)(2)(ii).

"Sexual abuse" means any act that involves sexual molestation or exploitation of a child by a parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child.

Subsection (a)(4)(i).

"Sexual abuse" includes, but is not limited to:
1. Incest, rape, or sexual offense in any degree;
2. Sodomy; and
3. Unnatural or perverted sexual practices.

Section (a)(4)(ii).

2. Maryland Code, Art. 27, § 464B creates the felony of a sexual offense in the third degree. It declares, in relevant part:

(a) ... A person is guilty of a sexual offense in the third degree if the person engages in sexual contact:

\* \* \* \* \* \*

(3) With another person who is under 14 years of age and the person performing the sexual contact is four or more years older than the victim.

3. Battery is a common law offense. "It is well settled that any unlawful force used against a person of another, no matter how slight,

years with all but six months suspended on the child abuse conviction and to five years consecutive on the third degree sexual offense conviction, the execution of which was suspended. The battery conviction was merged into the abuse and sexual offense convictions.[4]

Vogel appealed. He claimed that the jury's consideration of the credibility of the child was improperly influenced by the admission of evidence tending to show that he had engaged in prior acts of sexual misconduct with the child. The Court of Special Appeals saw no error in the admission of the evidence. It affirmed the judgment entered on the conviction of child abuse and merged therein the conviction for a sexual offense in the third degree. *Vogel v. State,* 76 Md.App. 56, 70, 543 A.2d 398 (1988). The Court of Special Appeals explained its conclusion.

Testimony as to a single sexual incident, occurring out of the blue ... might well have struck the jury as unbelievably incongruous, particularly if it followed two years of apparently meticulously proper behavior on the part of the appellant. One of the recognized exceptions to the "other crimes" exclusionary rule is where the evidence shows a passion or propensity for illicit sexual relations with the particular person who is the victim of the charged offense.

---

will constitute a battery." *Kellum v. State,* 223 Md. 80, 85, 162 A.2d 473 (1960), and authorities therein cited. L. Hochheimer, *Crimes and Criminal Procedure* § 255, at 288–289 (2d ed. 1904) declares:

The least actual force unlawfully applied to the person of another constitutes a battery. Force is applied, when there is any touching of the person or anything attached to the person by the aggressor.... It is not at all necessary that a blow should be struck or hurt inflicted.

*See also* R. Gilbert & C. Moylan, *Maryland Criminal Law: Practice and Procedure* § 3.1, at 47–48 (1983).

4. The State entered a nolle prosequi to a charge of attempted second degree sexual offense.

Vogel was twice tried. The first trial ended in the declaration of a mistrial.

*Vogel v. State,* 76 Md.App. at 68, 543 A.2d 398. Vogel was not satisfied and looked to us for help. We ordered that a writ of certiorari be issued.[5] We are presented with one question:

> Does there exist in Maryland a "sexual propensity" exception to the rule excluding evidence of other crimes and if so, did the trial court err in permitting the victim to testify to uncharged sexual offenses which were never established by clear and convincing evidence?

## I

Because the child's father had become too ill with cancer to participate in his son's life, the child's mother sought the services of the Big Brother Association. There came a time when Vogel acted as the child's Big Brother. Vogel visited the child regularly at home both during the week and on weekends. He befriended the entire family and was very supportive when the child's father died. Over a period of about two years, Vogel and the child, at Vogel's expense, went on overnight trips—three or four times to the King's Dominion amusement park, twice to Thurmont, Maryland, for skiing and bike riding, and once to New York City where they went sightseeing and Vogel visited his brother to discuss a family affair.

When the child was about 12 years of age, the mother decided to move back to her family home in Milroy, Pennsylvania. Vogel assisted them by renting a truck on his own and loading it with all of the family's belongings. The mother and members of the family, except the child, went ahead. Vogel and the child followed the next day in the truck. Shortly before they left, the incident occurred which led to the convictions in this case. *See Vogel v. State,* 76 Md.App. at 67–68, 543 A.2d 398.

The child spent the night after the mother left at the home of his married sister. Vogel picked him up there the

---

**5.** We granted the petition for a writ of certiorari filed by the Public Defender on behalf of Vogel and denied a pro se petition filed by Vogel.

next morning. Instead of driving directly to Pennsylvania, Vogel, accompanied by the child, went back to the vacated apartment. Vogel explained that he had left his jacket there. They entered the apartment by means of a key obtained from the rental agent. The child urged Vogel to leave because "[w]e're running late." Vogel responded: "No hurry, we've got plenty of time to get up there." The child replied: "Still, I'd like to go now...." "That's when," the child said, "he led me into the bathroom—grabbed my arm and like pulled me into the bathroom...."

Prior to this testimony, the child testified about what occurred on his overnight trips with Vogel. The first time they went to King's Dominion, while in their room at "Kings Quarters," apparently an inn on the grounds, Vogel told the child to take a shower. The child said that he did not need to take a shower—he had already taken one. Vogel replied: "I don't care, just go take a shower."

> So, I went in and took a shower, put my clothes on in the bathroom and came back out, and he started undressing me. I tried to stop him, but he just held my arms—he just held my one arm down so I couldn't move it and started taking off my pants and my underwear.

In response to questions by the State, the child recounted what happened next:

> And then he molested me.
>
> *     *     *     *     *     *
>
> He put his mouth on my penis.
>
> *     *     *     *     *     *
>
> [He] like went up and down on it.
>
> *     *     *     *     *     *
>
> [It lasted about] five minutes.

The child said that Vogel followed this course of action on all of the overnight trips. Without any variation in the pattern, Vogel, on each trip, undressed the child, placed his mouth on the child's penis, and "went up and down." This pattern of sexual abuse was even followed on one occasion in Vogel's home. Vogel took the child to meet Vogel's wife and young daughter. After the wife and daughter went to

bed, Vogel, in the basement recreation room, sexually abused the child in the same manner as he had on other occasions.

Vogel's conduct did not deviate from this pattern on the day he and the child left for Pennsylvania. After Vogel pulled the child into the bathroom of the apartment

he started with the same routine as the overnight trips.

\* \* \* \* \* \*

He started to take my pants off and molest me like the other times on the overnight trips.

\* \* \* \* \* \*

[Specifically, p]utting his mouth on my penis and going up and down.

When the act was concluded, Vogel "grabbed his jacket and we left.... We started up the road to Pennsylvania."

## II

▮ The exclusionary rule to which the Court of Special Appeals referred is that

evidence of other crimes committed by the defendant is generally inadmissible in a criminal case.

*State v. Werner,* 302 Md. 550, 556, 489 A.2d 1119 (1985). We put it this way in *Ross v. State,* 276 Md. 664, 669, 350 A.2d 680 (1976):

The frequently enunciated general rule in this state, followed uniformly elsewhere, is that in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible.

*See Cross v. State,* 282 Md. 468, 473, 386 A.2d 757 (1978); *Presley v. State,* 224 Md. 550, 558, 168 A.2d 510 (1961), *cert. denied,* 368 U.S. 957, 82 S.Ct. 399, 7 L.Ed.2d 389 (1962); *Weinstein v. State,* 146 Md. 80, 88, 125 A. 889 (1924). We observed in *Cross,* [282 Md.] at 473, 386 A.2d 757, that

[a] mere cursory review of the case law ... readily reveals that there are few principles of American criminal

jurisprudence more universally accepted than the rule that evidence which tends to show that the accused committed another crime independent of that for which he is on trial, even one of the same type, is inadmissible.

We found that the law of this State is fully in accord. *Id.* (citing authorities). "Yet," we were careful to point out, "as with many firmly established legal principles, there are exceptions which at times appear to swallow the rule." *Id.* One of these exceptions, recognized in all of our cases concerned with the general rule, is "in prosecutions for sexual crimes, when similar offenses have been committed by the same parties prior to the crime alleged." *Berger v. State,* 179 Md. 410, 414, 20 A.2d 146 (1941). "But," we warned, "this exception does not apply to prior offenses against any other person than the [victim]." *Id.* So, we pointed out in *State v. Werner,* 302 Md. at 553, 489 A.2d 1119, that

> in a prosecution of a man for incest with one of his daughters, the State is prohibited from introducing evidence to show that the defendant committed incest with another daughter.

But we noted, *id.* n. 7:

> On the other hand, in a prosecution for incest, evidence of other acts of "incest between the *same* parties prior to the offense charged" is admissible....

The quote was from *Wentz v. State,* 159 Md. 161, 165, 150 A. 278 (1930) (emphasis added). In *Ross* we spoke of evidence of prior offenses being admissible "to show [that the accused had] a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial...." 276 Md. at 670, 350 A.2d 680. We quoted the teaching of *Ross* with approval in *Cross,* 282 Md. at 474, 386 A.2d 757. It is abundantly clear that this Court has recognized the exception to the rule excluding evidence of prior crimes when (1) the prosecution is for sexual crimes, (2) the prior illicit sexual acts are similar to that for which the accused is on trial, and (3) the same accused and victim are involved.

Vogel urges that our references to the exception were not pronouncements but dicta unnecessary for the decision in the cases and thus not binding as precedent. *See Black's Law Dictionary* at 408 (5th ed. 1979). Perhaps so. But even if each of our references to the exception over the years were dicta, we cited the exception with apparent approval and never expressed or indicated that we would not favor its application in the proper circumstances. The proper circumstances have arrived. We shall apply the exception. It thereby sheds whatever status it may have had as dicta and joins the case law of Maryland.

The question Vogel presented to us asks first whether there "exist[s] in Maryland a 'sexual propensity' exception to the rule excluding evidence of other crimes...." The answer is a qualified "yes." It is true that in *Ross* we spoke of a "passion or propensity for illicit sexual relations," 276 Md. at 670, 350 A.2d 680. But, as is clear from our discussion above, we have carefully circumscribed the exception. Our acceptance of the exception is not to be taken as meaning that we adopt a broad "sexual propensity" exception to the general rule. The exception our predecessors recognized and which we apply here does not reach beyond the three requirements we have set out. It is strictly limited to the prosecution for sexual crimes in which the prior illicit sexual acts are similar to the offense for which the accused is being tried and involve the same victim.

■ On the facts in the case at hand, the exception applies to permit the challenged evidence to be admitted. The prior illicit sexual conduct was comprised of acts of fellatio. The prior acts of fellatio were practiced by Vogel on the child. The charges against Vogel in the case here were bottomed on an act of fellatio practiced by Vogel on the child. Thus, as the exception requires, there was a concurrence of a prosecution for sexual crimes, prior illicit sexual acts similar to that for which the accused was on trial, and the same accused and the same victim.

### III

■ The fact that evidence of prior crimes is within the ambit of an exception to the exclusionary rule does not mean that it is thereby admissible. "[T]he trial judge still possesses discretion as to whether [the. evidence] should be received." *Cross*, 282 Md. at 474, 386 A.2d 757. We have declared our agreement

> with those courts which have held that in order to be admissible for the limited purposes enumerated in the appropriate exception, ... evidence [of the collateral offenses] must be clear and convincing to the trial judge.

*Id.* at 478, 386 A.2d 757.

The second part of the question presented to us asks whether "the trial court err[ed] in permitting the victim to testify to uncharged sexual offenses which were never established by clear and convincing evidence." The question presupposes a conclusion. Of course, if the premise of this part of the question were correct—that the prior offenses were not established by clear and convincing evidence—the answer would be "yes." It is our function, however, to determine whether the trial judge abused his discretion in permitting the challenged evidence to go before the jury. In so doing it is first *our* duty to ascertain whether the evidence was sufficient in law to be "clear and convincing" to the judge. *See State v. Faulkner*, 314 Md. 630, 634–635, 552 A.2d 896 (1989). We must also, in determining the propriety of the judge's exercise of discretion, consider whether he

> carefully weigh[ed] the necessity for and probativeness of the evidence concerning the collateral criminal act against the untoward prejudice which is likely to be the consequence of its admission.

*Cross*, 282 Md. at 474, 386 A.2d 757.

We noted in *Cross v. State*, 282 Md. at 478 n. 7, 386 A.2d 757 (citation omitted):

> The preferred method for submitting any evidence of other crimes to the court during trial would be by way of

a proffer to the trial judge outside the presence or hearing of the jury. Such a proffer not only protects the jury from immediate prejudice, but also allows the trial judge to determine whether there is any way to limit the prejudicial aspects of the evidence while retaining its probative character and whether the evidence should properly be introduced at that time.

In the case at hand, defense counsel anticipated that the State would seek to adduce evidence of Vogel's prior sexual acts with the child. He filed a motion in limine which was heard before trial on memoranda and argument. Defense counsel referred to five exceptions to the exclusionary rule set out in *Ross* ("one, motive; two, intent; three, absence of mistake; four, common scheme or plan; or five, the identity of the person charged with the commission of a crime"). He argued that none of the exceptions was applicable here, that on balance there "is very little probative value, and there is great prejudice to [Vogel]," and that the judge "should consider the likelihood that these alleged past bad acts, in fact, did occur." Obviously familiar with the allegations of past acts, defense counsel indicated that there were "some seven" prior acts the State "would have the complaining witness testify to." He observed that

There has been no convictions, first of all, as to any of those other matters. Secondly, while there were charges regarding two of them, those charges have been dismissed. Third, the complaining witness has, in prior sworn testimony, repudiated his statement that one of these incidents occurred.

He pointed out

that as to another one of these seven incidents, it is alleged to have occurred immediately following a meeting between Mr. Vogel, his wife, his daughter, and the complaining witness, and that Mr. Vogel's wife and daughter remained in the immediate proximity of the alleged incident, all of which goes to show that it is unlikely that any of these alleged past bad acts occurred, and when balancing the prejudice to the Defendant with the likelihood

of them having occurred, the balance tipped quite decisively in favor of excluding this evidence.

He further brought to the judge's attention that

as to all of these acts, that this complaining witness was asked by a police officer, who will testify here in the course of this trial, and by his mother if any of these acts had occurred, and he repeatedly denied that they had occurred, also going to the issue of unlikely occurrence.

Defense counsel submitted that for all those reasons the challenged evidence should be excluded, not because it may be probative ("any time you make an accusation against someone, it has some probative value") but that

it is unreliable evidence, because there is no proof of that evidence, other than the allegation of the person making it. It is uncorroborated, it is subject to attack, as I have outlined, and in this case it truly is very unreliable evidence with high prejudicial impact. We are here to assure Mr. Vogel a fair trial, and in that vein, I believe that the motion should be granted.

In response, the State's Attorney referred to "another exception," that which we have discussed *supra*. He declared that the prior acts here were squarely within that exception. He observed:

These are cases that Montgomery County could not have charged, they did not occur within our jurisdiction, and, obviously, I have no control over what a prosecutor has done in any other jurisdictions. It is important, however, that the Court know that Mr. Vogel has never been acquitted of any of these other crimes. The matters occurring in Prince George's County, the charges were terminated before jeopardy attached, or the case proceeded to any trial on the merits.

He balanced any prejudice against the probative value. He explained:

I do not feel that it is going to add any prejudice whatsoever to Mr. Vogel for the same complaining witness on evidence of the same type and with the same degree of [probativeness] to testify as to the entire rela-

tionship between himself and this man, but I think it is unfair for the picture to be painted as though there was one incident that occurred on June 22, 1985, [the date of the crime charged] coming literally out of the blue, creating the impression that it never occurred at any other time.

The State's Attorney argued that defense counsel

has suggested a very full arsenal with which to attack this boy. He does have prior denials. He has got contradictory statements under oath. This is all available to him. It can all be laid out in front of the Jury, and I feel to have the context limited in this fashion would just prevent the State from having this matter being fairly heard.

Defense counsel countered by quoting *Cross:* "Before evidence of another crime may be admitted, the accused's involvement in the uncharged crime must be established." He opined that this requirement must be shown by evidence clear and convincing to the trial judge. He urged that the State on its proffer of the evidence had not satisfied the test.

We have adopted the definition of clear and convincing evidence as more than a preponderance of the evidence and less than evidence beyond a reasonable doubt. *Berkey v. Delia,* 287 Md. 302, 319–320, 413 A.2d 170 (1980). *See Snyder v. Glusing,* 308 Md. 411, 425, 520 A.2d 349 (1987). We have "held that there is not just one 'satisfactory explanation of reasonable doubt and we [have] decline[d] to prescribe an instruction that will apply in every case.'" *Poole v. State,* 295 Md. 167, 186, 453 A.2d 1218 (1983), quoting *Montgomery v. State,* 292 Md. 84, 95, 437 A.2d 654 (1981). The same is true of "clear and convincing" evidence, but we think that it is helpful to look at the instruction on that standard suggested by the Committee on Civil Pattern Jury Instructions of the Maryland State Bar Association, Inc. It reads:

To be clear and convincing, evidence should be "clear" in the sense that it is certain, plain to the understanding,

and unambiguous and "convincing" in the sense that it is so reasonable and persuasive as to cause you to believe it. MPJI 1:8(b) (2d ed. 1984). Of course, to be clear and convincing, evidence in its intermediate status between reasonable doubt and preponderance, need not be established with absolute certainty and that it is to some degree conflicting does not preclude the trial judge from being satisfied that it is nonetheless clear and convincing.[6]

In ruling on the motion, the trial judge was fully aware of the law and of all of the circumstances surrounding the challenged evidence. He distinguished between the present case and those in which the evidence related to different acts or different victims. He said:

This case, as I understand it, what the State proposes to introduce is evidence of similar context between the complaining witness and the Defendant in this case, and that it is recognized—the Ross case itself recognizes that an additional exception to the general rule, in addition to what you have cited to the court, is when it intends to show a passion or propensity for illicit relations with a particular person concerned in the crime on trial.

He continued:

The very nature of this charge, and, apparently, based on your proffer, is the case will rise and fall on the

---

6. Although Vogel does not specifically refer to *Kucharczyk v. State*, 235 Md. 334, 201 A.2d 683 (1964), it seems that he would have its teachings reach out to include the proposition that conflicting or impeachable testimony is so unreliable as to be entitled to no weight. *Kucharczyk* does not remotely stand for that proposition. The Court of Special Appeals pointed out in *Bailey v. State*, 16 Md.App. 83, 93–94, 294 A.2d 123 (1972):

Trial testimony frequently is replete with contradictions and inconsistencies, major and minor. It is the quintessential approach of the Anglo–American trial system to rely fundamentally upon cross-examination, upon the introduction of prior inconsistent statements, upon impeachment devices generally, upon sequestration, upon oral argument to ferret out and to highlight such contradictions if and when they exist.

This was the position of the trial judge here.

credibility of the complaining witness, and it will be his credibility which is at issue, and that would be the same nature of testimony that the State proposes to offer with respect to these prior acts, and I think that sets it aside and distinguishes it from the general rule.

Denying the motion in limine, he said:

Now, if there be a prior inconsistent statement, obviously, that would be subject of your right to impeach that testimony by whatever means available, and, again, that would be up to the Jury to assess the credibility and make the determination. They will be instructed that they are to make their determination based on the evidence as it relates to the particular charges that are before the Court now, and not based on other acts, but they may consider that in the light of their duties as far as assessing the credibility of the witness' testimony.

We glean from the judge's comments in the light of the arguments and memoranda before him, that, in resolving the motion in limine, he looked to the proper law and found the challenged evidence to be within the appropriate exception. We see no reason to think that he did not apply the correct standard for the sufficiency of the evidence. We believe that he balanced the probativeness of the evidence against likely prejudice and determined that the scale tipped in favor of the probative value. We cannot say that the discretion he exercised in arriving at his decision was improperly exercised. The case here is not one involving a stranger, a person unknown to the molested child who picked up the child on the street or at a playground. Vogel had developed a position of trust with the child and the child's family. On the surface he was indeed a "big brother" to the child. The relationship which Vogel fostered was a significant factor to explain the child's denials as to Vogel's conduct and the child's failure to report the incidents sooner. As the State points out, the challenged evidence

illuminates the context of the matter at issue in such a way as to allow the trier of fact to render a fair judgment

based on a complete understanding of the parties' relationship.

     .     *     *     *     *     *     *

Indeed, the incident for which Vogel was convicted would have made little sense if taken out of context. Evidence of other offenses supplied that context and as such were highly probative and crucial to the State's case.

The evidence went far beyond the mere showing that Vogel was cursed with a propensity to indulge in illicit sexual acts.

The trial went as forecast at the hearing on the motion. Evidence tending to prove the current offense and to establish the prior offenses came from the child.[7] As predicted by the State's Attorney at the hearing, some contradictory statements were brought out. Some prior denials by the child as to the past conduct of Vogel were shown, but the child offered explanations for them. In the main, however, in the face of vigorous cross-examination, the child stood steadfast. The testimony adduced at the trial provided no surprises for the State's Attorney, defense counsel, or the judge. It was in accord with what the hearing on the pretrial motion indicated it would be. The State's Attorney expected it, defense counsel anticipated it, and the judge had been made aware of it. Evidence adduced at the guilt stage of the trial provided no sound reason for the judge to back away from his refusals to preclude evidence of the prior acts.[8]

---

**7.** At the point in the trial when the child was about to testify with respect to the prior offenses, there was a bench conference. Defense counsel said:

    If there is other testimony to be elicited concerning past bad acts, alleged past bad acts between Mr. Vogel and [the child], elicited through the testimony of [the child], I would object to any and all questions related to those past bad acts, and I would just ask on the record for a standing objection to—

The judge interjected: "The objection is overruled."

**8.** At the conclusion of the State's case, defense counsel "moved to dismiss on all counts" and stated his reasons with particularity. At the close of all the evidence, defense counsel "renewed" his motion to "dismiss and for a directed verdict," and again stated his reasons. We

We hold that the trial judge did not abuse his discretion in admitting the evidence of Vogel's prior illicit sexual acts.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.

ELDRIDGE, J., concurs in the result only.

take it that defense counsel was requesting a judgment of acquittal. *See* Md. Rule 4–324. In any event, the judge denied the motion. In denying the latter motion, the judge said:

> For the reasons earlier stated, the Court believing that testimony is sufficient prima facie, and sufficient generally to go to the jury to have the issues determined, the Court will deny all of your motions.

At the penalty stage of the trial, before the imposition of sentence, defense counsel filed "a motion for judgment of acquittal or a new trial." The reasons he gave for the motion were characterized by the State's Attorney as comprising issues which "were raised and aired at one time or another during the course of the trial." The judge denied the motion. He said, in relevant part:

> There has been submitted no new authority which would persuade the Court that the original ruling with respect to the admission of that type of evidence [evidence of prior offenses] was erroneous. The court then felt, and still does, that the course of conduct between the victim in this case and the defendant was legitimate and proper evidence to be submitted to the jury.