857 A.2d 1166

**Alphonso Dominique HYMAN**

v.

**STATE of Maryland.**

**No. 1759, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Sept. 13, 2004.

Gwyn Hoerauf, Germantown, for Appellant.

Steven L. Holcomb (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for Appellee.

Panel: KENNEY, CHARLES E. MOYLAN, Jr., (Retired, specially assigned), ANDREW L. SONNER *, (Retired, specially assigned), JJ.

KENNEY, J.

Appellant, Alphonso Hyman, was convicted by a jury sitting in the Circuit Court for Montgomery County of second degree assault and kidnapping. He was sentenced to ten years' incarceration, with all but five years suspended, for the second degree assault charge, and three years' incarceration, with all but 18 months suspended, for the kidnapping charge. In addition, he was sentenced to five years probation. Appellant noted a timely appeal and presents three questions for our review, which we have reworded:

---

* Sonner, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

1. Did the trial court err by admitting evidence of a prior uncharged allegation of rape made by Jennifer Hyman against appellant?

2. Did the trial court err when it permitted Jennifer Hyman to testify in rebuttal about why she had terminated the babysitter?

3. Did the trial court err by admitting hearsay evidence?

Finding no error, we affirm the judgments of the trial court.

## FACTUAL AND PROCEDURAL HISTORY

On the evening of December 24, 2002, Jennifer Hyman ("Ms. Hyman") was in front of her apartment building unloading Christmas presents from her car when she was approached by appellant, her estranged husband. According to Ms. Hyman, appellant told her to take her hands out of her pockets. She did and then "shrunk to the ground" in fear and stated, "[J]ust go away. Please. Just leave me alone."

Appellant pulled out a "chef's knife" and told her to get up. He lifted Ms. Hyman up by her jacket and ushered her down the street to his car. Ms. Hyman, in fear for her life, was unable to walk, and again fell to the ground. In response, appellant said, "Come with me or I'll do it right here." Ms. Hyman got up and followed him to his car.

After appellant opened the passenger side rear door, he told Ms. Hyman to get in and take off her shoes, socks, pants, and underwear. Appellant asked for Ms. Hyman's keys and took them out of her pocket. He told her to get down on the floorboards of the car and "lay back." Then he went to his trunk, presumably to either put something inside or retrieve something. Appellant proceeded around to the driver's side door, pulled the seat up, and told Ms. Hyman to lie back further. When she complied, he left the car.

After a few moments, Ms. Hyman tried to open both rear doors, but the child locks were engaged. When she peeked over the dashboard, she saw appellant across the street in her car. She then exited the car via the front seat and "took off

running down the street." Ms. Hyman flagged down a passing car, got inside, and exclaimed to the driver, "Help me. Please, help me. My husband is trying to rape me. Can you please take me to the police station."

Julio Shaik was the driver of the car that Ms. Hyman flagged down. He testified that he had just dropped his wife off at a Christmas party and was looking for a parking spot when he noticed Ms. Hyman running toward him. He stated that she was frantically trying to get his attention, and when she got in the car she told him that "her husband was trying to rape her." He drove her to the police station.

Upon arriving at the police station, appellant reported the incident and explained to the police that one month earlier, on November 23, 2002, appellant had raped her in their home. Over objection, Ms. Hyman was permitted to testify about the prior alleged rape. She explained that she and appellant had had an "off and on," "rocky relationship" for quite some time. Ms. Hyman testified that they had two sons and had lived apart several times during their 8½ year relationship.

Late in the night on November 22 and into the morning of November 23, 2002, appellant and Ms. Hyman had an all night conversation about their marriage. Ms. Hyman told her husband that their relationship was over and that she was "going to move on with [her] life." When she went to bed, appellant followed her and made sexual advances, which she rejected. The next morning, she got up with the children, made their breakfast, and then went back to bed. After what seemed like a few minutes, the youngest son started to cry. Ms. Hyman remained in bed while appellant got up. Shortly thereafter he returned to the bedroom, locked the door, and told Ms. Hyman to "[g]et up." At first, she pretended to be sleeping, but she eventually opened her eyes. Appellant was staring at her with "piercing eyes," and said, "I'm evil and I am going to do evil things and I am going to make you hate me." She testified that he had the same "piercing eyes" during the incident on December 24, 2002.

Appellant ordered Ms. Hyman to take off her underwear and night shirt and perform fellatio on him. As she did, he kept one hand behind his back. He later pulled a gun from behind his back and cocked it over Ms. Hyman's head. Appellant told Ms. Hyman that "if [she] did what he told [her] to do then he wouldn't hurt [her]." Appellant then demanded that Ms. Hyman "make love" to him twice and lay beside him. She complied, and afterward he permitted her to leave the room. Later that evening, she told appellant he had to leave. He packed some clothes and left the residence. Ms. Hyman did not report the incident to the police, but applied for and obtained an *ex parte* protective order two days later.

The trial court permitted Ms. Hyman's co-worker, Joy Robinson, over objection, to testify that Ms. Hyman took the Monday following the November 23, 2002 incident off work to obtain the protective order. Robinson also testified that Ms. Hyman told her that appellant had raped her.

Patricia Anderson was the children's babysitter. She testified that, during the day on December 24, 2002, appellant stopped by with 11 or 12 bags of toys for his sons for Christmas. When Ms. Hyman came by in the evening to pick up her sons, she could not get all of the toys in her car. She returned later that night to pick up the rest of the toys. The incident occurred when she was unloading the toys at her residence.

Appellant was arrested and charged with attempted rape in the first and second degree, kidnapping, false imprisonment, assault in the second degree, carrying a weapon openly with intent to injure, and violation of an *ex parte* protection order. The seventh count (violation of an *ex parte* protection order) was severed for trial purposes. The suppression court ruled that evidence concerning the November 23, 2002 incident was admissible at trial, finding that it was not "impermissibly prejudicial." Appellant was convicted of second degree assault and false imprisonment. He later pleaded guilty to violation of an *ex parte* protection order. He presents this timely appeal.

## DISCUSSION

### *I. Bad Acts and Sexual Propensity*

■ The suppression court admitted the evidence concerning the November 23, 2002 incident on two bases: 1) pursuant to Maryland Rule 5–404(b), to show appellant's intent to commit rape; and 2) under the "sexual propensity exception," explained in *Vogel v. State*, 315 Md. 458, 554 A.2d 1231 (1989). Appellant argues that admission on both grounds constituted error.

Maryland Rule 5–404(b) states:

(b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

■ "[G]enerally, 'evidence of a defendant's prior criminal acts may not be introduced to prove that he is guilty of the offense for which he is on trial.' " *Borchardt v. State*, 367 Md. 91, 133, 786 A.2d 631 (2001), *cert. denied*, 535 U.S. 1104, 122 S.Ct. 2309, 152 L.Ed.2d 1064 (2002), *rehearing denied*, 536 U.S. 978, 123 S.Ct. 11, 153 L.Ed.2d 875 (2002) (citations omitted). Such evidence is only admissible when it "has special relevance, i.e., is substantially relevant to some contested issue in the case and is not offered simply to prove criminal character, and . . . has probative force that substantially outweighs its potential for unfair prejudice. . . ." *Harris v. State*, 324 Md. 490, 500, 597 A.2d 956 (1991).

■ When evidence of other crimes is offered, the court must employ a three-part test to determine if the evidence is admissible.

" 'When a trial court is faced with the need to decide whether to admit evidence of another crime—that is, evidence that relates to an offense separate from that for which the defendant is presently on trial—it first deter-

mines whether the evidence fits within one or more of the [special relevancy] exceptions. That is a legal determination and does not involve any exercise of discretion.

If one or more of the exceptions applies, the next step is to decide whether the accused's involvement in the other crimes is established by clear and convincing evidence.

\* \* \*

If this requirement is met, the trial court proceeds to the final step. The necessity for and probative value of the "other crimes" evidence is to be carefully weighed against any undue prejudice likely to result from its admission. This segment of the analysis implicates the exercise of the trial court's discretion.' (Citations omitted)."

*Streater v. State*, 352 Md. 800, 807, 724 A.2d 111 (1999) (citations omitted).

In this case, the suppression court, determining that the evidence fit into the 5-404(b) category of "intent," stated:

The State has to prove intent. The defendant has to prove nothing. No one would seek to take away the State's—the constitutional rights of the defendant. He has a right to come into this case and sit there and sit there and sit there and say nothing, and he cannot be required to do anything.

At the same time the State has the highest burden known to law, beyond a reasonable doubt and to a moral certainty, to establish that the circumstances occurred and that they occurred with the requisite intent.

It is clear that the prior act, if believed by the jury, which will be a credibility issue if the defendant, by his trial strategy, elects to make it so—or perhaps otherwise—but the State, in its burden of proving beyond a reasonable doubt intent, may use the prior act.

It is close in time. It is the same person. It shows a propensity for sexual assault. It shows the use of a weapon. It shows a serious assault.

The facts demonstrate strong similarities between the two incidents. During the November 23, 2002 incident, appellant instructed Ms. Hyman to disrobe from the waist down, to perform fellatio on him, and then to engage in sexual intercourse. During that incident, he produced a gun, with which he threatened Ms. Hyman. On December 24, 2002, appellant, again armed with and displaying a weapon, approached appellant and directed her to disrobe from the waist down. He also told her to "[c]ome with me or, I'll do it right here." Ms. Hyman escaped before any other act could occur, but these facts, and the reasonable inferences therefrom, could reasonably indicate that appellant had the intent to rape Ms. Hyman again on December 24, 2002. We are not persuaded by appellant's efforts to distinguish the similarities between the incidents, including: that the weapon in the first incident was a gun, and in the second a knife; that one happened when they were living together and the other during a period of estrangement; and that one happened inside the home and the other outside. The trial court did not err in determining that the November 23, 2002 incident was admissible to establish appellant's intent on December 24, 2002.

■ The second prong of the test required the court to determine whether, through clear and convincing evidence, the prior bad act was actually committed. Appellant contends that the evidence presented at the motions hearing was "generic" and insufficient to meet the burden. We disagree.

During the hearing, Ms. Hyman testified in detail about the events that took place on November 23, 2002. She explained that she did not report the incident to the police because she did not want to get her husband in trouble with the law. She also testified about applying for and receiving the *ex parte* order. In this case, the court clearly found that there was "very strong evidence, certainly by clear and convincing evidence," that the November 23, 2002 incident occurred. Ms. Hyman's testimony, if believed, was sufficient in itself to provide clear and convincing evidence that the November 23, 2002 incident occurred.

**628**

■ Finally, the court, in the third step of its analysis, must assess whether any unfair prejudice will result by admitting the evidence. During the motions hearing, the court stated, "The probative value, given the State's burden in this case and the constitutional rights of the defendant, certainly outweighs any impermissible prejudice to [appellant]." We have recently explained the balancing necessary to weigh value against prejudice.

> The "unfair" component of the prejudice is not the tendency of the evidence to prove the identity of the defendant as the perpetrator of the crimes. What is "unfair" is only the incremental tendency of the evidence to prove that the defendant was a "bad man." As we balance, therefore, the emphasis must be not on the noun "prejudice" but on the qualifying, and limiting, adjective "unfair."

> It is the failure to appreciate this distinction that leads many analyses astray. There is frequently a tendency to conclude that if the State's case is otherwise a strong one, the probative value of "other crimes" evidence is proportionately diminished. That is not the case. Probative value does not depend on necessity. When we are talking only about the legitimate prejudice that inevitably results from competent evidence enjoying a special or heightened relevance, there is no downside to making a strong case even stronger.

> The probative value must, of course, be measured against the "unfair" component of the prejudicial evidence. When that is the subject of the balancing, necessity is a factor. We balance 1) the need for the evidence against 2) the tendency of the evidence to prejudice the defendant unfairly. In terms of legitimate prejudice, on the other hand, the State is not constrained to forego relevant evidence and to risk going to the fact finder with a watered down version of its case.

*Oesby v. State,* 142 Md.App. 144, 166–67, 788 A.2d 662, *cert. denied,* 369 Md. 181, 798 A.2d 553 (2002).

Appellant argues that the November 23, 2002 incident was not necessary to prove intent to rape because that intent could have been inferred from the facts surrounding the December 24, 2002 incident. To be sure, on December 24, 2002, appellant confronted Ms. Hyman with a weapon and later directed her to disrobe from the waist down, but he never told her that he was going to rape her, and, perhaps only because she was able to escape, he made no overt physical attempt to rape her. He only told Ms. Hyman to "[c]ome with me or, I'll do it right here." This could be interpreted as a threat to rape her, but it also could have been a threat to cause her some other form of physical harm or even death. We agree with the suppression court that the evidence from the December 24, 2002 incident alone might not convince a jury, beyond a reasonable doubt, that appellant had the intent to rape Ms. Hyman. In fact, appellant was not convicted of rape in any degree with evidence of both incidents. Therefore, we do not perceive any abuse of discretion by the suppression court in determining that the probative value outweighed the potential prejudice.

The evidence was also admissible to show propensity to commit a particular sexual crime. In *Vogel,* 315 Md. 458, 554 A.2d 1231, the Court of Appeals recognized a "sexual propensity" exception to the rule excluding other crimes. The Court stated:

> It is abundantly clear that this Court has recognized the exception to the rule excluding evidence of prior crimes when (1) the prosecution is for sexual crimes, (2) the prior illicit sexual acts are similar to that for which the accused is on trial, and (3) the same accused and victim are involved.

*Id.* at 465, 554 A.2d 1231. Vogel was charged with child abuse and third degree sexual offense for performing fellatio on a child. The Court determined that the State was permitted to introduce evidence that Vogel had previously performed fellatio on the child. In making its decision, the Court focused on the notion that during the second incident the exact same sexual acts were being performed by Vogel on the child.

In this case, the suppression court found that all three requirements necessary under the "sexual propensity exception" were present. First, the prosecution was for the sexual crime of rape. Second, Ms. Hyman testified that she had previously been raped by appellant on November 23, 2002. The facts surrounding the two incidents were similar. On each occasion, Ms. Hyman was threatened with a weapon and ordered to disrobe from the waist down. Third, the parties from both incidents are the same. Thus, there was no error in admitting this evidence under the sexual propensity exception.

## II. Rebuttal Evidence

■ During trial, Patricia Anderson testified that she was the babysitter of Ms. Hyman's children. When Anderson was asked if Ms. Hyman terminated her employment, she responded, "No." Ms. Hyman was then recalled to rebut Anderson's testimony. In so doing, Ms. Hyman testified that she "terminated [Anderson's] employment because [her] son informed [her] that [Anderson] hit him."

Appellant argues that this testimony was impermissible. He acknowledges that Anderson was "a State witness who admitted to being partial to [appellant]," but contends that Ms. Hyman's rebuttal testimony was offered to prove that Anderson was an "abusive person," and thus not trustworthy.

At trial, the following testimony transpired:

[THE STATE]: Ms. Hyman, can you tell the members of the jury how Patricia Anderson's employment was terminated?

[MS. HYMAN]: I terminated her employment because my son informed me that she hit him.

[DEFENSE COUNSEL]: Object.

THE COURT: All right. I will sustain the objection as to the reasons for the termination.

[THE STATE]: Yes, Your Honor. I am not proffering it's subject to the truth of the matter asserted. Just—

THE COURT. Okay.

The testimony about Anderson allegedly hitting the child was not admitted and, therefore, should not have been considered by the jury. Despite the court's sustaining his objection, appellant argues that the "damage was done." But appellant did not request further relief at trial; he did not ask the court to strike the statement, that a curative instruction be given, or that a mistrial be granted. Having received the only relief he requested, appellant effectively waived all other potential review on appeal.

Moreover, even if appellant had preserved the issue, the contention is without merit. Rebuttal evidence is within a trial court's sound discretion and will not be disturbed on appeal unless there is an abuse of discretion. *State v. Booze,* 334 Md. 64, 68, 637 A.2d 1214 (1994). Rebuttal evidence is admissible when it " 'explains, or is a direct reply to, or a contradiction of, any new matter that has been brought into the case by the accused.' " *Id.* at 70, 637 A.2d 1214 (citations omitted).

The trial court only admitted Ms. Hyman's testimony that she had, in fact, terminated Anderson. That testimony was a direct reply to and contradiction of Anderson's testimony that she had not been terminated by Ms. Hyman.

### III. Hearsay Evidence

Appellant's final contention is that the trial court erred in admitting hearsay evidence. Appellant contends that Joy Robinson's testimony, concerning the November 23, 2002 incident, was improperly admitted as a prior consistent statement. He argues that Ms. Hyman had reason to fabricate her version of the story to Robinson, and thus Robinson's testimony was only offered "to bolster the tenuous credibility of an estranged spouse." We are not persuaded.[1]

---

1. The State argues that this argument was not preserved because appellant did not object when other witnesses testified about the November 23, 2002 incident. Appellant asked for and was granted a continuing objection to all testimony about the November 23, 2002 incident.

"'Generally, statements made out of court that are offered for their truth are inadmissible as hearsay, absent circumstances bringing the statements within a recognized exception to the hearsay rule.'" *Hudson v. State*, 152 Md.App. 488, 507, 832 A.2d 834, *cert. denied*, 378 Md. 618, 837 A.2d 928 (2003) (citations omitted). The trial court found that Robinson's testimony was a prior consistent statement, pursuant to Maryland Rule 5–802.1(b), which provides:

A statement that is consistent with the declarant's testimony, if the statement is offered to rebut an express or implied charge against the declarant of fabrication, or improper influence or motive.

Robinson's testimony was offered in support of Ms. Hyman's previous testimony that she was raped on November 23, 2002. She testified to the following:

[THE STATE]: And can you please tell the members of the jury what phone call [sic] was about?

[ROBINSON]: [Ms. Hyman] had called—

[DEFENSE COUNSEL]: Objection

[THE STATE]: You can answer

[ROBINSON]: [Ms. Hyman] had called me, and she just started talking, I can't remember exactly what about, and then—I could tell she wanted to tell me something, and I wasn't really sure what it was, and then finally she told me that there was an incident her [sic] husband.

She told me that her husband had—

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled

[THE STATE]: You can answer.

[ROBINSON]: She told me that her husband had pulled a gun out on her and raped her, basically, asking her to do things. She didn't really say specifically what—

[THE STATE]: What else he asked her to do?

[ROBINSON]: Right.

[THE STATE]: Did she say where this had occurred?

[ROBINSON]: In her apartment.

[THE STATE]: Did she say when it had occurred?

[ROBINSON]: It was the previous day.

To be admissible under Rule 5–802.1(b) the offered testimony must be consistent with the declarant's testimony and it must be offered after there was an explicit or implicit charge that the declarant fabricated her testimony. Robinson's testimony supports Ms. Hyman's allegation that she had previously been raped by appellant. Furthermore, Ms. Hyman's credibility and the notion that she fabricated the first rape were called into question from the start of trial. During opening argument, appellant's counsel stated that Ms. Hyman was a "very disturbed woman and she has problems with the truth."

Appellant argues that the statement is inadmissible because Ms. Hyman had a "motive to fabricate" the allegation of rape during her discussion with Robinson, and therefore Robinson's testimony was a repetition of that fabrication. Again, we disagree. Ms. Hyman called Robinson the day after the rape to explain why she would be taking the day off work. In the context of this trial, the motive to fabricate that story would arise after the December 24, 2002 incident. Ms. Hyman reported the incident to Robinson well before December 24, 2002. Thus, we are persuaded that the trial court was proper in admitting Robinson's testimony, under Rule 5–802.1(b), supporting Ms. Hyman's allegation that appellant had raped her and rebutting his allegation that Ms. Hyman was not truthful.

Moreover, pursuant to Rule 5–802.1(d), the testimony was admissible as a prompt complaint of a sexual assault, and therefore we could affirm the trial court's decision on that ground. *See In re Delric H.,* 150 Md.App. 234, 241 n. 7, 819 A.2d 1117 (2003) (stating that we may " 'affirm the trial court if it reached the right result for the wrong reasons' ") (citations omitted). Rule 5–802.1 states, in pertinent part:

The following statements previously made by a witness who testifies at the trial or hearing and who is subject to

cross-examination concerning the statement are not excluded by the hearsay rule:

\* \* \*

(d) A statement that is one of prompt complaint of sexually assaultive behavior to which the declarant was subjected if the statement is consistent with the declarant's testimony[.]

Judge Moylan, writing for the Court in *Nelson v. State*, 137 Md.App. 402, 411, 768 A.2d 738 (2001)(citing *Cole v. State*, 83 Md.App. 279, 287, 574 A.2d 326 (1990)), explained the preconditions for admitting a prompt complaint of a sexual attack into evidence:

> [I]t is subject to limitations such as 1) the requirement that the victim actually testify; 2) the timeliness of the complaint; and 3) the extent to which the references may be restricted to the fact that the complaint was made, the circumstances under which it was made, and the identification of the culprit, rather than recounting the substance of the complaint in full detail.

As we previously explained, Ms. Hyman reported this incident to Robinson the day after it happened, and Robinson's testimony was consistent with Ms. Hyman's. *See Nelson*, 137 Md.App. at 418, 768 A.2d 738 (stating that a complaint made within 24 to 48 hours "would almost certainly, however, have no adverse effect on the admissibility of a prompt complaint of a sexual attack").

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**