Bartol, C. J.,
delivered the opinion of the court.
Four bills of exceptions were taken by the appellant, who was defendant below, and have been argued on this appeal. The first three present questions of evidence, and the fourth brings before us for review the ruling of the Superior Court upon the defendant’s third and fourth prayers, which were rejected.
The action is indebitatus assumpsit, and the declaration contains counts on promissory notes and the common money counts; the pleas are: “ never indebted as alleged,” “ never promised as alleged,” “ limitations,” and “ the discharge of the defendant under the insolvent laws.” At the trial, there was no dispute as to the existence of the original debt. The promissory notes of the defendant were produced and the' signature thereto admitted. The whole contest turned upon the question whether the debt had been revived by a new promise. Both plaintiff and defendant were called as witnesses. The former testified that the defendant had, after his application for the benefit of the insolvent laws, expressly promised to pay the debt, while the latter testified positively to the contrary, denying that he had ever made such a promise. Other testimony was introduced on this subject, and evidence was offered impeaching the veracity of the defendant. The jury have passed upon the evidence, and we have no power, to revise their verdiet ; our only province and duty are to pass *upon the questions of law presented by the exceptions. These observa *198 tions are made because of the peculiar character of the questions submitted to the jury, and we would not have the judgment of this court construed as an approval of their verdict, that was a matter exclusively for the jury, and we have no right either to approve or disapprove.
First Exception. — We think there was no error in excluding the declarations of the defendant made to the witness, William McConky, and concur in the reason stated by the Judge of the Superior Court, “ that the declarations and statements of the defendant made in the absence of the plaintiff could not in this way be introduced for the purpose of sustaining his defense.” The case does not come within the principle stated by Greenleaf, vol. 1, sec. 201, “ that where the admissions of a party are offered as evidence against him, the whole admission must be taken together, and it would be error to exclude a part.” Here the declarations were not offered by the plaintiff. The witness was called for the defendant and was testifying in chief, it was therefore not competent for him to introduce in his defense his own declarations made out of the presence and hearing of the plaintiff. Nor were they admissible on the ground that the witness was acting as agent of the plaintiff; his testimony fails to establish such agency; being the friend and relative of the defendant, he was called on by the plaintiff with the request that he would use his influence to induce the defendant to do something for the plaintiff. He was not authorized to make any arrangement with the defendant, nor had he any authority to bind the plaintiff by any compromise or surrender of his claim. It would be carrying the doctrine of agency farther than the authorities warrant to hold under such circumstances, that the plaintiff was bound or concluded by the defendant’s statements made to the witness.
The second exception raises the question whether if a party to a cause has been sworn as a -witness, the opposite party may offer evidence impeaching his veracity, without first giving-notice of such a design. No authority has been produced by *the appellant’s counsel to support his position that such preliminary notice is necessary. The invariable practice has been to allow such evidence without previous notice, the presumption being that every witness ought to be prepared to sustain his character whenever impeached; and we do not per *199 ceive any good reason why the practice should be changed where the parties are by law made competent witnesses.
• The third exception presents a more interesting question, one upon which there has been some conflict of opinion among the text writers, and in the decisions. It is as to the proper mode of examination where the purpose is to impeach the general character of a witness.
The particular point presented by the exception is whether, after the impeaching witness has testified that a party’s general reputation for truth and veracity in the community where he lives is unfavorable; he may be asked the question “ whether from that reputation he, the witness, would believe him on oath, in a matter in which he was interested.” It has been argued that such a question is inadmissible, “ because it is to allou the prejudices and feelings of the witness to enter into and form a part of the judgment of the jury,” and “because it is to depart from sound principles and established rules of law, by introducing as evidence the mere opinions of the witness in a matter where mere opinion is not admissible testimony. In support of this view several American decisions have been cited, and are referred to under this point in the appellant’s brief.
The cases on this subject are also referred to in Teese v. Huntingdon, 23 How. 2; but the point was not involved or decided in that case. One of the leading decisions in support of the appellant’s position is Phillips v. Kingfield, 1 Appleton, 375, in which Judge Shepley delivered an elaborate opinion, which is cited with apparent approbation in 1. Greenl. Ev. sec. 461, {note). The learned author in his text says: “ The regular mode of examining into the general reputation, is to inquire of'the witness *whether he knows the general reputation of the person in question among his neighbors, and what that reputation is. In the English courts the course is further to inquire whether from such knowledge, the witness would believe that person upon his oath. In the American courts the same course has been pursued ; but its propriety has' of late been questioned, and perhaps the weight of authority is now against permitting the witness to testify as to his own opinion.” In the notes are cited a number of American cases in which the decisions are not harmonious. Whatever may *200 have been the course of decisions in other States, and they have certainly been of late somewhat conflicting, there can be no doubt that such a question as is here objected to, has been uniformly allowed by the English courts, from the earliest times. The text writers- Peake, Starkie, Phillips and Taylor agree upon the formula. In 2 Phillipps Ev. 955, the learned author says : “ The regular mode of examining into the general character of a witness is by inquiring of the witnesses, who are called to impeach it, whether they have the means of knowing his general character, and whether with such knowledge, they would believe him on his oath.” Many English cases are cited in the notes to which we refer, without repeating them here. This question does not seem to have been raised in this court, though the practice in Maryland, we believe, has always been in conformity with the ancient English rule; and we do not see any sufficient reason for pronouncing it erroneous. The reasoning of Judge Shepley in Phillips v. Kingfield, supra, in support of a contrary opinion, is ingenious, and seems to have been sanctioned by the courts in some of the other States. But it may be said, the effect of the question is not to elicit from the witness a mere opinion, its object is to test the extent or degree of badness of the general reputation of the person impeached; and is the mode by which a knowledge of the real character of the witness impeached, its quality and degree may be best conveyed to the jury.
*Upon the fourth exception we are of opinion that the law of the case was correctly given to the jury in the several prayers which were granted, and that there was no error in refusing the third and fourth prayers of the appellant. The third prayer asked for an instruction to the effect that an express promise, within three years, was necessary to remove the bar of the Statute of Limitations. That was erroneous; it is well settled that a recognition of the existence of the debt, as stated in the plaintiff’s third prayer, is sufficient.
There was evidence to go to the jury of an express promise by the defendant, after his application for the benefit of the insolvent laws, thus bringing the case within the decisions of Yates v. Hollingsworth, 5 H. & J. 216, and B. & O. R. R. Co. v. Clark, 19 Md. 509. The fourth prayer was, therefore, properly refused. Judgment affirmed.