629 A.2d 1233

Gilbert ACUNA

v.

STATE of Maryland.

No. 110, Sept. Term, 1992.

Court of Appeals of Maryland.

Aug. 30, 1993.

M. Cristina Gutierrez (on brief), Baltimore, for petitioner.

Sarah E. Page, Asst. Atty. Gen. (J. Joseph Curran, Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

RODOWSKY, Judge.

We granted certiorari in this child sex-abuse case to consider two issues, one involving expert testimony that the victim suffered post traumatic stress disorder (PTSD), and the other involving rebuttal testimony by the victim that the accused had committed other similar, but uncharged, criminal sex acts upon the victim.

The petitioner, Gilbert Acuna (Acuna), was charged, *inter alia*, with second degree sex offense based on an incident that occurred on the evening of May 21, 1990. The victim, Stephanie, was age four at the time. The charges were tried to a jury in July 1991.

In July 1989 Stephanie's family, consisting of her father, mother, infant sister, and herself, moved into an apartment adjoining that of Acuna and his future wife. The members of the two households became somewhat friendly. By January 1990 Stephanie often would visit in the Acuna apartment in the early evening.

On the evening in question, Stephanie's mother had bathed the two girls. Stephanie was dressed in underpants and a pullover, knee length nightgown. Stephanie went to the Acuna apartment while her younger sister remained at home with her mother. When Stephanie's mother later went to the Acuna apartment, she entered without knocking. No one was in the living room, dining room, or kitchen. The mother then heard Stephanie's voice from the bedroom saying, "No, no, I don't want to do that. We don't do that."

The bed in the Acuna apartment had no frame; it consisted of a large mattress on a box spring sitting directly on the floor. Stephanie's mother saw her daughter lying back on the bed with Acuna kneeling in front of her. The child's nightgown was pulled up and her legs were spread, but her underpants were on. Acuna had his elbows resting on the mattress, his hands were near Stephanie's ankles, and his face was six or seven inches from Stephanie's "private area."

When Stephanie's mother exclaimed, " 'What the hell are you doing?' " Acuna jumped up and began hitting himself in the head with his hands. Acuna paced back and forth between the kitchen and the bedroom speaking very rapidly and unintelligibly. He began to cry. He told Stephanie's mother that he would never do anything to hurt Stephanie or any of her family.

The police were notified that evening. During the course of the investigation and preparation for trial, Stephanie told her

mother, the police, the prosecutor, and others that Acuna had licked her "birdie," *i.e.,* her vaginal area, on ten different occasions prior to May 21. Stephanie's parents also had her evaluated by Dr. Gail Walter, a clinical psychologist.

Dr. Walter's testimony, reviewed in Part I, *infra,* was given in the State's case in chief. Acuna testified that Stephanie had been jumping on the bed and that he merely had been trying to pull her off of it when the child's mother walked in. He denied ever having molested the child. Stephanie, in rebuttal testimony reviewed in Part II, *infra,* described sexual contact by Acuna on certain occasions other than that charged in the indictment.

The jury found Acuna guilty of second degree sex offense and related charges. The circuit court merged into the second degree sex offense conviction all of the remaining charges. Acuna was sentenced to ten years, of which all but eighteen months was suspended. That eighteen months confinement is to be served in home detention, followed by one year of probation. Execution of the sentence was stayed pending appeal, and Acuna was released on personal recognizance pending appeal.

The Court of Special Appeals affirmed in an unreported opinion. We granted Acuna's petition for certiorari which challenges Dr. Walter's testimony and Stephanie's rebuttal testimony concerning other crimes.

## I

On direct examination by the State, Dr. Walter testified that behaviors depicted by Stephanie were consistent with the disorder known as PTSD. Acuna's principal argument is that that evidence is irrelevant.

Dr. Walter saw Stephanie, accompanied by her parents, in November 1990. As is "customary," a developmental history was taken, based on information furnished by Stephanie's mother. Dr. Walter performed the "usual" initial evaluation of the youngster, interviewing her both in the presence of her mother and outside of the presence of her parents. Standard

paper and pencil combined tests of intelligence were administered. These consist of ten subtests designed to measure intelligence in ten different areas. Stephanie's overall I.Q. was "[q]uite above average." Art diagnostic and play diagnostic techniques also were employed by Dr. Walter. Dr. Walter found that it was very difficult to have Stephanie finish a task, and that her drawings were "very, very regressed." "[S]he was crawling around on the floor making baby noises." The way in which Stephanie used the materials indicated to Dr. Walter that Stephanie was "under great distress."

The prosecutor asked Dr. Walter to tell the jury what PTSD is. The witness essentially defined it as "the psychiatric diagnostic formulation that refers to a cluster of symptoms that we see in people after they have been exposed to a particularly distressing or traumatic event." Dr. Walter summarized the symptoms from the Diagnostic and Statistical Manual Of Mental Disorders (DSM–III). She specified those symptoms of PTSD that she observed in Stephanie.[1] The trial court refused to permit Dr. Walter to express an opinion whether the behaviors displayed by Stephanie were consistent with victims of child abuse, but the court did permit Dr. Walter's opinion that the behaviors depicted by Stephanie were consistent with PTSD. Dr. Walter also had observed Stephanie testifying in the State's case in chief. She opined that Stephanie's in-court behavior was consistent with that observed during the November 1990 evaluation.

In contending that the foregoing testimony is irrelevant, Acuna considers only Dr. Walter's direct examination. Acuna argues that the testimony is "evidentiarily meaningless" unless the symptoms of PTSD "were either actually or inferen-

---

1. Dr. Walter testified:

"I observed her having difficulty concentrating, difficulty staying with one particular subject. I was able to observe very regressed behavior, the very childlike baby behavior; difficulty in trusting; difficulty in being reassured. I mean she startled very easily but she was visibly startled when they changed activities and it was difficult for her to relax and difficult for her to trust somebody that she didn't know."

tially connected to the sexual offenses on which [Acuna] was standing trial." Brief of Appellant at 16. In this respect Acuna relies on *State v. Allewalt*, 308 Md. 89, 517 A.2d 741 (1986).

*Allewalt* was a rape prosecution in which the victim was a thirty-six year old woman, and the accused was the victim's daughter's boyfriend. All three resided in the same home where the rape was perpetrated. After the accused had testified that the intercourse was consensual, the State, in rebuttal, called a psychiatrist who had examined the victim. The psychiatrist opined that the victim suffered from PTSD. The psychiatrist further opined, based upon a history given by the victim, that the stressor that caused the anxiety disorder was the rape described by the victim, and not the earlier breakup of the victim's marriage of sixteen years. This Court held that the trial court had not erred in admitting the opinion evidence.

In *Allewalt* we equated admissibility of the diagnosis of the recognized anxiety condition and of the opinion concerning the stressor with the admissibility in personal injury cases of a diagnosis and of an opinion on causation, based on history. *Id.* at 98–99, 517 A.2d at 745–46. Because the expert in *Allewalt* did not purport to be able to identify the cause of the condition based only on the observed symptoms, but had made plain that the causation opinion depended on the patient's history, this Court concluded that there was neither impermissible prejudice nor an attempt to certify to the credibility of the victim. *Id.* at 102–03, 109, 517 A.2d at 747–48, 751.

■ Here the issue which Acuna seeks to present · asks whether Dr. Walter's direct testimony can be probative of any material issue in the case, absent evidence relating Stephanie's symptoms to the alleged abuse. That issue, however, is not presented by the record as a whole. On cross-examination of Dr. Walter, the following additional opinion evidence was elicited:

"Q. Now the events that you were told triggered these symptoms and engendered this change in behavior was the

allegation of sexual abuse alleged to be committed by Mr. Acuna on Stephanie in May of 1990; was it not?

"A.   The parents, I mean I would like to answer that in a way that's a little more comprehensive. The parents noted a change in her behavior over a period of approximately 6 months and I think that would put it at about the time of the disclosure.

"Q.   Well, at the time you evaluated—disclosure meaning to you, are you meaning the disclosure in the allegation against Mr. Acuna?

"A.   The disclosure and—

"Q.   Between—the six months between the date this sexual event is alleged to have occurred and the date of your evaluation?

"A.   It was my understanding there was a deterioration in her status and that's by parental reports over a period of—lasted approximately 6 months so that by my figures but it was about the time the disclosure that this morning was testified to.

"Q.   The disclosure by Stephanie?

"A.   Yes.

"Q.   That time frame is May of 1990, is it not?

"A.   Yes."

Thus, as in *Allewalt,* the expert was able, through history, to connect the PTSD to the criminal conduct charged. Under *Allewalt,* there was no error.

Acuna seeks to distinguish *Allewalt* because the victim in that case, an adult, furnished the history directly to the psychiatrist, whereas Stephanie's history was furnished by her mother to Dr. Walter. It was resolved in *Yellow Cab Co. v. Henderson,* 183 Md. 546, 553, 39 A.2d 546, 550 (1944), that a medical opinion concerning a child may be based in part upon information received by the professional "from the child's mother, who was in fact the child's nurse and attendant."

Nor is there any merit in Acuna's contention that Dr. Walter's examination was exclusively for the purpose of deter-

mining whether Stephanie's testimony would have to be taken by closed circuit television under Md.Code (1974, 1989 Repl. Vol., 1992 Cum.Supp.), § 9–102 of the Courts and Judicial Proceedings Article. Dr. Walter expressly denied that the evaluation was limited to that purpose.

## II

Acuna's "other crimes" issue arises out of the following circumstances. Aware that Stephanie had said that Acuna licked, or attempted to lick, her on ten prior occasions, the prosecutor moved *in limine* in advance of trial for a ruling that proof of these uncharged criminal acts would be admissible. *Cf. Medical Mut. Liab. Ins. Soc'y v. Evans,* 330 Md. 1, 24, 622 A.2d 103, 114 (1993) (To permit counsel to obtain ruling on whether proposed proof will be admitted, and in order to avoid mistrials, contemporary practice recognizes motion *in limine.*). The State relied on *Vogel v. State,* 315 Md. 458, 554 A.2d 1231 (1989), which sustained the admission of uncharged sex crime acts on a fourteen year old boy. *Vogel* reaffirmed

"that this Court·has recognized the exception to the rule excluding evidence of prior crimes when (1) the prosecution is for sexual crimes, (2) the prior illicit sexual acts are similar to that for which the accused is on trial, and (3) the same accused and victim are involved."

*Id.* at 465, 554 A.2d at 1234.

To be admitted into evidence during the State's case in chief, not only must prior criminal acts have some special relevance that justifies an exception to the general rule barring admissibility of other crimes, but the fact of the other offenses also must be established by evidence that is clear and convincing to the trial judge. *Harris v. State,* 324 Md. 490, 496–501, 597 A.2d 956, 960–62 (1991); *Vogel,* 315 Md. at 467, 554 A.2d at 1235. In addition, we have said that the trial judge possesses discretion in determining whether other crimes evidence that has special relevance should be received. *Cross v. State,* 282 Md. 468, 474, 386 A.2d 757, 761 (1978). In exercising that discretion, the trial judge should "carefully

weigh the necessity for and probative value of the evidence of other bad acts against any unfair prejudice likely to result from its admission." *Harris*, 324 Md. at 498, 597 A.2d at 960.

In the instant matter, in its proffer, the State acknowledged that "there may be some problems with the child narrowing down a time period [and that] she is not going to be able to pinpoint exact dates."

The court denied the State's motion, saying that it "would not be able to make a determination that there is clear and convincing evidence that the acts occurred as alleged these ten prior occasions." The court, which had previously observed Stephanie at a hearing concerning the use of closed circuit television, based this conclusion "in large measure on the inability of the victim to get a good grasp on matters such as mathematics [*i.e.*, counting], [and] the perception of time." The trial court further said that it was "convinced that the likely prejudice would overwhelm or exceed any probative value such testimony would have." Of particular concern to the trial court was that the jury, acting on a general comment that there were ten prior acts and without any further information about the other incidents, might be inclined in the process of bargaining to find the defendant guilty based on one or more of the uncharged prior acts.

The matter proceeded to trial. The State produced sufficient proof of the charges, and Acuna testified in the defense case.[2] In the course of his direct examination, Acuna gave the following evidence:

"Q. On May 21, Mr. Acuna, did you lick Stephanie ... ?

"A. (In English) Not at all, no.

"Q. [D]id you ever on any day that you knew Stephanie ... ever lick her?

"A. (Conferring with interpreter) (In English) Never."

At the close of the defense case, the State sought to have Stephanie testify to the ten prior incidents to rebut Acuna's

---

2. Acuna's native language is Spanish. He is able to speak English, after translating his thoughts from Spanish.

universal denial. The trial judge believed that Acuna had opened the door by the universal denial, but the court still was concerned whether evidence produced through Stephanie could meet the clear and convincing standard. The matter was resolved by having Stephanie testify out of the presence of the jury.

At that hearing Stephanie told the court that there were ten times when Acuna had licked her "birdie" with his tongue. She indicated by pointing on her person that her "birdie" was between her legs. She said that Acuna removed her underpants down to her ankles when he licked her "birdie." When questioned for specifics, Stephanie said that one incident occurred on the couch in the living room of the Acuna apartment, another incident occurred in the kitchen when Acuna had put her on the counter and taken her panties down, but she had kicked him before he had a chance to lick her. A third incident also occurred in the living room, but on the floor when she again kicked Acuna when he tried to lick her. She also told of the incident in the bedroom when her mother had come in before Acuna had pulled her underpants down. The trial court ruled to be admissible the three incidents, specifically described, that were in addition to the one charged in the indictment. Stephanie would not be permitted to testify, however, that there were six or seven other incidents of a like nature. Stephanie thereafter testified in the State's rebuttal case.

Acuna's principal argument is that the trial court's initial ruling, that unfair prejudice outweighed probative value, remained unaffected by anything that transpired thereafter up to the change in ruling. Blended with this argument are contentions that the clear and convincing standard was not met, and that the court's reversal of its prior ruling was unfair.

■ The sex crimes exception to the prohibition against other crimes evidence differs markedly from other evidence that is excepted from that rule. When evidence of other crimes is admitted because it has special relevance tending to

establish, for example, motive, intent, absence of mistake, identity, or common scheme, *see Ross v. State,* 276 Md. 664, 669–70, 350 A.2d 680, 684 (1976), the evidence is relevant to an issue other than the character or propensity of the accused to commit crime. But the evidence of prior offenses admitted in *Vogel* was "admissible 'to show [that the accused had] a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial. . . .' " 315 Md. at 465, 554 A.2d at 1234 (quoting *Ross,* 276 Md. at 670, 350 A.2d at 684); *see also Cross,* 282 Md. at 474, 386 A.2d at 761.

The primary policy consideration underlying the rule against other crimes evidence "is that this type of evidence will prejudice the jury against the accused because of the jury's tendency to infer that the accused is a 'bad man' who should be punished regardless of his guilt of the charged crime, or to infer that he committed the charged crime due to a criminal disposition." *Tichnell v. State,* 287 Md. 695, 711, 415 A.2d 830, 839 (1980). Yet, in the area of sex crimes, particularly child molestation, "courts have been likely to admit proof of prior acts to show a party's conformity with past conduct." 5 L. McLain, *Maryland Practice: Maryland Evidence, State & Federal* § 404.1, at 344 (1987). Professor McLain suggests that this relaxation of the general prohibition is "probably because the character evidence is believed to have greater probative value in those circumstances." *Id.* In sex crimes cases the special relevance of the other crimes evidence that may be admissible is a criminal propensity particularized to similar sex crimes perpetrated on the same victim.

Thus, in a sex offense prosecution, when the State offers evidence of prior sexual criminal acts of the same type by the accused against the same victim, the law of evidence already has concluded that, in general, the probative value, as substantive evidence that the defendant committed the crime charged, outweighs the inherent prejudicial effect. The discretion exercised by the trial judge in weighing unfair prejudice against probative value is concerned with special features in the particular case.

■ In the matter before us, when the trial court ruled adversely to the State on its pretrial motion *in limine,* the particular prejudice that was of concern to the court grew out of the vagueness of the proffer that there were ten prior incidents. Later, when the trial court heard Stephanie out of the presence of the jury, and she was able to give particulars concerning three of the incidents, that concern was alleviated as to the three incidents. Stephanie, therefore, was permitted to testify before the jury. Similarly, the detail that Stephanie was able to furnish demonstrated a knowledge beyond the experience of most five year old children and further reinforced the trial court's conclusion that the clear and convincing standard of proof had been met.

Finally, the unfair prejudice-probative value determination was weighted even further in favor of admissibility by Acuna's universal denial. "[W]hen a person is charged with a certain violation of the law, he cannot show that he did not violate it on previous occasions when he had the opportunity and was tempted to do so." *Berger v. State,* 179 Md. 410, 415, 20 A.2d 146, 148 (1941). Acuna broke out of the confines, imposed by the circuit court, that had tested relevance, up to that point, by the events of May 21, 1990. Indeed, Acuna's counsel acknowledged to the trial court that the question inviting the universal denial had been put to Acuna because counsel "felt comfortable," given the court's prior ruling. Had the trial court refused to permit the State to rebut the universal denial, Acuna would have been in a position to argue to the jury that the State's version of the events of May 21, 1990, was totally inconsistent with the uncontradicted evidence of the prior relationship between Acuna, Stephanie and their families. Acuna's assertion that the probative value-prejudice relationship remained undisturbed is incorrect.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER, GILBERT ACUNA.*

Dissenting Opinion by ELDRIDGE and ROBERT M. BELL, JJ.

ELDRIDGE and ROBERT M. BELL, JJ., dissenting:

For the reasons set forth in the dissenting opinion in *State v. Allewalt,* 308 Md. 89, 111–125, 517 A.2d 741, 752–759 (1986), we would reverse.