636 A.2d 50

**Clarence Alroy YOUNT**

v.

**STATE of Maryland.**

**No. 597, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Jan. 27, 1994.

Certiorari Denied June 6, 1994.

Debra A. Saltz, Student Atty. (Stephen E. Harris, Public Defender and Claudia A. Cortese, Asst. Public Defender, on the brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Kreg Paul Greer, Asst. Atty. Gen., Baltimore, and Walter B. Dorsey, State's Atty. for St. Mary's County of Leonardtown, on the brief), for appellee.

Argued before WILNER, C.J., MOYLAN, J., and JAMES S. GETTY, Judge (retired) Specially Assigned.

MOYLAN, Judge.

The appellant, Clarence Alroy Yount, was convicted by a St. Mary's County jury, presided over by Judge John Hanson Briscoe, of a third-degree sexual offense. On this appeal, he raises the single contention that Judge Briscoe erroneously permitted the prosecution's expert witness to testify on an allegedly ultimate jury issue, to wit, on a matter relating to the credibility of the child abuse victim.

The child abuse that constituted the third-degree sexual offense was committed by the appellant on his eight-year-old daughter sometime during the summer of 1988. It was only when the eight-year-old victim revealed the abusive incident to a friend at school that school authorities, in turn, learned about it and that the investigation in this case began.

One month after reporting the incident, however, the young victim recanted her allegations at an interview with a juvenile court master and several attorneys. She told the master and the others that "her father had never done anything to her." She insisted that she had made up the story because her cousin Carolyn and her Aunt Dorothy had threatened to hurt her. Subsequently, however, the victim recanted her recantation. She explained that she had denied the charges in front

of the juvenile master and the attorneys in order to protect her father "from the police."

The eight-year-old victim was the only witness called during the prosecution's case in chief. Her credibility was obviously critical for without reliance on her testimony there was no case. At one point during her cross-examination, the victim denied "ever telling anyone either on that day in chambers or at some other time [that] she made up the story" because of being threatened by her aunt or cousin. When asked why the offense had not been reported for about seven months, the victim replied "I don't know." Her vacillation was self-evidently the critical factor in any assessment of her credibility.

The appellant, for his part, testified that all of his daughter's allegations were false. He testified further that it was two days after the alleged incident was reported when he informed "Aunt Dorothy" that she was no longer welcome to live with the family, thereby supplying a motive for the very bringing of the charges.

In rebuttal, the State called Catherine Long Meyers, a child therapist with a master's degree in psychology and approximately 150 hours of training in child sexual abuse. Ms. Meyers also holds a certification in Maryland as a "professional counsellor" and a national certification as a "clinical mental health counsellor." After a thorough examination of her credentials and experience, Ms. Meyers was qualified as an expert in the area of child sexual abuse, albeit over the objection of the appellant.

Ms. Meyers testified that, as a general phenomenon, child sexual abuse victims frequently recant their initial reports of abuse. She testified, moreover, that children who know their abusers are more likely to delay in making the initial disclosure than are children who are abused by strangers. The prosecutor then posed for Ms. Meyers the hypothetical scenario of a child between the age of 8 and 10 who has reported abuse by a family member, has been placed in "the system," is still exposed to family members, and has shortly thereafter recanted the initial report of abuse. Ms. Meyers was asked

whether the child's recantation would be abnormal under those circumstances. She replied that such recantation was both normal and very common. She explained that it was also very common for a child then to "take back" or retract the recantation once the child's support systems were in place.

■ Under the well established Maryland common law of evidence governing expert testimony, it was within the discretion of Judge Briscoe to admit the testimony of Ms. Meyers in this case. In *Simmons v. State,* 313 Md. 33, 41, 542 A.2d 1258 (1988), the Court of Appeals discussed the admissibility of expert testimony generally:

"A determination as to the admissibility of expert testimony is based on several findings. First, the trial court must determine whether the evidence to be presented is a proper subject for expert testimony. The standard for relevance under Maryland common law is whether the jury will receive appreciable help from the expert testimony in resolving issues presented in the case. *See State v. Allewalt,* 308 Md. 89, 101, 517 A.2d 741, 747 (1986); *Consolidated Mechanical Contractors, Inc. v. Ball,* 263 Md. 328, 338, 283 A.2d 154, 159 (1971)."

Lynn McLain, *Maryland Evidence,* § 702.1, at 212–213 (1987), speaks to the same effect:

"Under modern Maryland case law, the standard for the admissibility of expert evidence is whether the finder of fact can receive appreciable help from an expert on the subject matter. No longer need the subject matter be so far 'beyond the ken of laymen' that the finder of fact could not have any understanding of the particular issue without expert help." (footnotes omitted).

The expert testimony of Ms. Meyers clearly passed that "helpfulness" test of admissibility. The psychological phenomenon of wavering or vacillating on the part of a sexual child abuse victim—first accusing, then recanting, then renewing the accusation—is something that is not part of the common currency of lay experience. Under the circumstances, knowl-

edge of such a phenomenon would be of appreciable help to the fact finder in a case such as this.

Indeed, the acid test for whether expert testimony would be of appreciable help to a fact finder is easy to apply. We simply ask ourselves whether we three members of a judicial appellate panel would, were we fact-finding jurors, have found the testimony helpful. The answer is clearly, "Yes." The testimony would have provided a professionally sound explanation for what might otherwise have seemed to us an unsettling inconstancy of testimonial purpose on the part of the eight-year-old alleged victim. Without expert guidance from a discipline not our own, we might easily have fallen into the untutored layman's error of dismissing as noncredible testimony that, in the arcane context of sexual child abuse, should not be so readily dismissed. Expert testimony in this area would be of appreciable help.

*Simmons v. State* went on, 313 Md. at 41, 542 A.2d 1258, to discuss the second criterion of admissibility:

> "Before expert testimony is admitted the court must also determine whether the proposed expert is qualified to testify by virtue of education and experience. *See Crews v. Director,* 245 Md. 174, 179, 225 A.2d 436, 439 (1967) (a psychiatrist not licensed to practice medicine in Maryland was permitted, in light of the psychiatrist's extensive professional training and experience, to opine that the appellant was a defective delinquent); *Casualty Ins. Co. v. Messenger,* 181 Md. 295, 298–99, 29 A.2d 653, 655 (1943)."

McLain, *Maryland Evidence,* § 702.2, at 221–222 (1987), is also helpful on the subject of a particular expert's qualifications.

> "If the court determines that scientific, technical, or other specialized knowledge is the proper subject of expert testimony, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify on that subject, unless exempted by statute from testifying. The expert's training or experience need not have been formal. But it must be such that the witness' knowledge of the

subject is significantly better than the average layperson's, so that the expert's training will be of appreciable help to the jury. Similarly, a witness may qualify as an expert without actual experience if he or she possesses sufficient special knowledge obtained from study or observation." (footnotes omitted).

The education and the professional experience of Ms. Meyers was fully explored during the *voir dire* examination of her expertise. Because of that education, training, and experience, she possessed relevant knowledge that an ordinary layman would not. Judge Briscoe's ruling that she was qualified to testify as an expert was, therefore, not an abuse of discretion.

■ Anticipating little solace from the Maryland common law of evidence, the appellant turns to statute and particularly to Md.Code Ann., Cts. & Jud.Proc. § 9–120 (1989):

"Notwithstanding any other provision of law, a psychologist licensed under the 'Maryland Psychologists Act' and qualified as an expert witness may testify on ultimate issues, including insanity, competency to stand trial, and matters within the scope of that psychologist's special knowledge, in any case in any court or in any administrative hearing."

If § 9–120 clearly applies to the expert testimony of Ms. Meyers in this case, then the requirements of § 9–120 indisputably control. If § 9–120, on the other hand, is not applicable to the specific instance of expert testimony in this case, then we fall back on the general common law of evidence. McLain, *Maryland Evidence*, § 702.1, at 213 (1987), explained:

"Many areas of expert testimony are governed by statute. They include, for example, expert opinions regarding sanity or insanity. Absent a statutory directive, however, the appropriateness of expert testimony is decided in the trial judge's discretion. Most appellate decisions, therefore, have affirmed the trial court's admission or exclusion of expert testimony on a particular matter." (footnotes omitted).

In *State v. Bricker*, 321 Md. 86, 581 A.2d 9 (1990), Judge Chasanow juxtaposed the different species of controlling law, 321 Md. at 95:

"The designation of a witness as an expert is a subject of broad judicial discretion in most instances. When there is a statute directly on point, however, the expert must meet the enumerated qualifications. A psychiatrist who was not licensed in Maryland nevertheless was allowed to testify as an expert in a 'defective delinquency' proceeding. *Crews v. Director*, 245 Md. 174, 225 A.2d 436 (1967). We explained that the common law does not require a medical expert witness to be licensed. This Court further stated that '[i]n Maryland this requirement has not been introduced by statute ...' *Id.* at 179, 225 A.2d at 438, thereby implying that the result likely would have been different if a statute had set forth minimum criteria for an expert in a particular situation." (citations omitted).

In this case, it is undisputed that Ms. Meyers was not "a psychologist licensed under the 'Maryland Psychologists Act.'" She was not, therefore, eligible for whatever testimonial enabling is provided by § 9–120. The question before us is whether her testimony was with respect to an issue that would require such testimonial enabling.

If Ms. Meyers had testified on an ultimate issue, the allowance of her testimony would concededly have been error under § 9–120. Ms. Meyers testified, of course, about a psychological phenomenon that may have had a bearing on the credibility of the State's only witness. Let it be noted that Ms. Meyers was not even testifying directly on the issue of the witness's credibility. She was testifying as to a phenomenon that had a bearing on an assessment of the witness's credibility. For the sake of argument, however, we will assume for the moment that Ms. Meyers was testifying directly on the issue of the witness's credibility itself. The question is whether such an issue was an *ultimate* issue. The appellant claims that such testimony was "on *the ultimate issue* of Miss Yount's credibility." That is simply not the case.

The credibility of a witness is not an ultimate issue. Had the State's indictment of the appellant alleged that his victim was credible and had the State at trial proved beyond a reasonable doubt that the victim was, indeed, credible, the simple truth is that the appellant could not be imprisoned on the basis of such allegation and proof. A witness's credibility cannot directly either convict or acquit. The issue of credibility is simply not the *ultimate* issue. It is not even a component part or an element of the ultimate issue. The *corpus delicti* of the crime charged is an ultimate issue. The criminal agency of the defendant for the crime charged is an ultimate issue.

By the same token, the criminal responsibility of the defendant is an ultimate issue. It is in this regard that the appellant purports to take comfort in *State v. Bricker,* 321 Md. 86, 581 A.2d 9 (1990). We find that sense of comfort misplaced. In *Bricker,* to be sure, the admission of the testimony of a nonlicensed psychologist was deemed to have been erroneous. That case, unlike the present one, dealt with the admission of that challenged testimony on the ultimate issue of criminal responsibility. *Bricker* applied the provisions of § 9–120 exclusively to the situation before it, where a nonlicensed psychologist was testifying on the "ultimate issue" of criminal responsibility. Judge Chasanow set out the four corners of *Bricker*'s analysis unmistakably, 321 Md. at 90:

"The issue before this Court is whether a nonresident psychologist who does not meet the licensing criteria as set forth in the appropriate Maryland statutes is *qualified to testify as an expert and render an opinion on a defendant's lack of criminal responsibility* by reason of mental retardation. We conclude that, before a witness may be permitted to testify as an expert on *the 'ultimate issue' of criminal responsibility,* the witness must meet the minimum statutory standards." (emphasis supplied).

■ Finding inadequate succor in the notion of even testimonial credibility itself, let alone a psychological phenomenon merely throwing some light on testimonial credibility, as an

"ultimate issue," the appellant turns to § 9–120. The appellant argues that the special testimonial eligibility requirements of § 9–120 must be satisfied before a psychologist will be permitted to testify in three different regards. The appellant's reading of § 9–120 would be as follows:

"... a psychologist licensed ... and qualified ... may testify on

[1]   ultimate issues, including insanity[;]

[2]   competency to stand trial[;]  and

[3]   matters within the scope of that psychologist's special knowledge ..."

It is the appellant's back-up argument that even if the credibility of the victim is not an "ultimate issue," the unlicensed psychologist should nonetheless not have been permitted to testify as to a matter "within the scope of [her] special knowledge." Such a reading, of course, would produce the absurd result that no unlicensed psychologist would ever be permitted to give expert testimony on any subject at all. Such expert testimony would, by definition, deal with matters "within the scope of that psychologist's special knowledge." That is not the only reason, however, to reject the appellant's strained construction of § 9–120.

If the appellant's essay into statutory construction were to be memorialized by an Arthur Conan Doyle or an Erle Stanley Gardner, the work would, no doubt, be entitled "The Strange Case of the Missing Semi-colons." The appellant is straining to construct a series of three items, all of which shall be the subject matter of the verbal phrase "may testify on." The legislative word processor, of course, had available to it the semi-colon and knew how to call it forth when needed. In this case, the missing semi-colons were not needed, for the only series intended by the Legislature was a subseries of objects of the preposition "including." Not simply the rules of grammar and punctuation but the obvious legislative intent was for the critical words to read:

"... a psychologist licensed ... and qualified ... may testify on ultimate issues, including

[a] insanity,

[b] competency to stand trial, and

[c] matters within the scope of that psychologist's special knowledge ..."

The testimonial qualification of a psychologist's being licensed is involved only in the limited situation where the psychologist will be testifying on an ultimate issue. The series of three items following the preposition "including" is simply an illustrative, but not necessarily exhaustive, list of what such "ultimate issues" might be. Thus, a psychologist (licensed or unlicensed) and any other expert remains free, as was always the case under the common law of evidence, to testify as to matters within the scope of that psychologist's (or other expert's) special knowledge. The only situation controlled by the statute is that unlicensed psychologists will not be permitted to testify on ultimate issues. In all other regards, the common law is unchanged.

■ The final refutation (we hesitate to overuse the word "ultimate") to the appellant's strained construction is historical. Section 9–120 was enacted by Chapter 481 of the Legislative Acts of 1978. Its purpose was to liberalize and not to restrict available expert testimony even on ultimate issues. Prior to the enactment of the new statute, the prevailing Maryland case law was that only a psychiatrist (by virtue of being a Doctor of Medicine) was qualified to render an expert opinion on the ultimate issue of a defendant's sanity. Albeit by way of *dicta, State v. Tull,* 240 Md. 49, 55–57, 212 A.2d 729 (1965), strongly tilted in that direction. Picking up on the intimations of *State v. Tull,* we held, in *Saul v. State,* 6 Md.App. 540, 549–550, 252 A.2d 282 (1969), *aff'd on other grounds,* 258 Md. 100, 265 A.2d 178 (1970), *overruled in part on other grounds by Noble v. State,* 293 Md. 549, 559–569, 446 A.2d 844 (1982), that "an opinion as to the ultimate fact, whether or not the accused is insane ... should be reached by a medical diagnosis. Thus, the opinion must be made by a medically trained psychiatrist in order to be admissible in evidence." (footnote omitted).

When it came to an ultimate issue, such as criminal responsibility, the Maryland case law adamantly refused to make an exception for any psychologist. *Spann v. Bees,* 23 Md.App. 313, 320, 327 A.2d 801 (1974), *cert. denied,* 273 Md. 722 (1975); *State v. Williams,* 278 Md. 180, 184, 361 A.2d 122 (1976). That was the *status quo ante—prior, that is,* to the enactment of § 9–120. As *State v. Bricker* pointed out, 321 Md. at 95, 581 A.2d 9:

> "Prior to the enactment of Md.Code (1974, 1989 Repl. Vol.), Cts. & Jud.Proc. Art., § 9–120, although there was no statute specifically addressing the issue, psychologists had not been permitted to testify in a Maryland courtroom about the question of criminal responsibility."

When the Legislature in 1978 created § 9–120, its indisputable purpose was to loosen that testimonial straitjacket. It did just that. As *State v. Bricker* observed, 321 Md. at 96, 581 A.2d 9:

> "With the passage of section 9–120, a 'qualified' psychologist now may testify on 'ultimate issues,' including whether the defendant is not criminally responsible for his or her actions." (footnote omitted).

It liberalized the rules of admissibility so that, on ultimate issues, licensed psychologists could thereafter testify in much the same fashion as psychiatrists had always enjoyed. The precise stricture that the Legislature felt called upon to ameliorate had only applied to expert testimony on ultimate issues. The liberalizing purpose of the 1978 Act of the Legislature, therefore, dealt only with the subject of expert testimony on ultimate issues and cannot support the construction which the appellant now urges.

■ The appellant's "last gasp" contention is that the challenged expert testimony ran afoul of *Bohnert v. State,* 312 Md. 266, 539 A.2d 657 (1988), in that it invaded the province of the jury and erroneously advised the jury that the victim's version of events should be believed and that the appellant's version should be disbelieved. The quick answer to the contention is that the expert testimony in this case did no such thing. It

advised the jury as to the existence of a psychological phenomenon that would explain the child sexual abuse victim's wavering or vacillation. Beyond that, it did nothing to indicate that the victim's version of events rather than the appellant's version of events should be believed. In closing argument, appellant's counsel clearly conceded that Ms. Meyers's testimony did not deal directly with the credibility *vel non* of the child abuse victim:

"Ms. Meyers did not address any issues specifically with regard to [the victim] that I remember. I can't apply her testimony to [the victim] at all. She was asked some questions and she gave some answers based upon her experience about how different abused children react in different situations and why. But that is not evidence in this case for this child."

Recognizing the wide discretion vested in the trial judge in making such evidentiary rulings, we see no clear abuse of that discretion in this case.

*JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.*