670 A.2d 962

**James Lee HALL, Sr.**

v.

**STATE of Maryland.**

**No. 603, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Jan. 31, 1996.

Devy Patterson Russell, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Olga M. Bruning, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Alexander Williams, Jr., State's Attorney for Prince George's County of Upper Marlboro, on the brief), for Appellee.

Submitted before CATHELL, MURPHY and HOLLANDER, JJ.

Opinion by MURPHY, J.

## ON REMAND

MURPHY, Chief Judge.

This appeal from the Circuit Court for Prince George's County was originally submitted to us on December 14, 1994,

when James Lee Hall, Sr., appellant, presented two questions for our review:

I.   Did the trial court err in admitting expert testimony that the complaining witness suffered from conduct disorder as a result of being sexually abused?

II.  Are separate convictions and sentences for both second degree sexual offense and child sexual abuse improper?

In an unpublished opinion filed on January 18, 1995, we affirmed the judgments of the circuit court. Appellant then filed a petition for a writ of certiorari, in which he presented only the first question and requested that the Court of Appeals grant review "to resolve questions involving the admissibility of expert testimony about conduct disorder in child sexual abuse prosecutions."

Appellant's case has been remanded to us for reconsideration in light of *Hutton v. State*, 339 Md. 480, 663 A.2d 1289 (1995). We are persuaded that *Hutton* does not render inadmissible the testimony about which appellant complains, and we shall therefore affirm the judgments of conviction.[1]

### The Testimony At Issue

Appellant waived his right to a jury trial. Before the Honorable Audrey E. Melbourne, appellant contended that the alleged victim—appellant's son—suffered from so many emotional disorders that his testimony about what appellant had

---

1. There is no merit in appellant's contention that the verdicts were ambiguous and therefore created a doubt as to why Judge Melbourne imposed separate sentences for sexual child abuse and the second degree sexual offenses. In addition to the presumption that the judge knew the law and applied it correctly, *Hebb v. State*, 31 Md.App. 493, 499, 356 A.2d 583 (1976), from our review of the allegations in the charging document, the age of the victim, the victim's testimony about the period of time when the crimes occurred, the fact that separate sentences may be imposed for child abuse caused by second degree sexual offenses committed on or after July 1, 1990, and the merger of counts discussion that occurred immediately prior to sentencing, we are persuaded that Judge Melbourne did not err in imposing separate sentences.

done to him was not worthy of belief.[2]  The opening statement of appellant's trial counsel characterized the charges as "fabrications or imaginations on the part of this child."

The victim was the State's first witness.  His current foster father then testified briefly.  The State's third witness was the clinical social worker who had been treating the victim.  No objection was interposed when the State offered this witness "as an expert in the area of clinical social work with an emphasis on child and family development."  The following transpired during the expert's direct examination:

Q.  And did you have occasion to note what, if any, I guess symptoms or problems he displayed to you during the course of these sessions?

A.  Yes.  Initially [the victim] was spewing anger.  He was a very, very angry child.  He was just acting out all over the place, and he came in, he wasn't going to say hello.  He was ready to throw a tantrum.

That was [the victim's] initial behavior.  That has changed considerably.

Q.  How has that changed?

A.  He is still an angry child in many ways, but he has his anger much more under control.  He has been able to talk about what he feels rather than act it out.  He still acts out, but not as much.

Q.  Okay.

A.  And he had a lot of—very dysphoric.  And his feelings are very negative.  I think he has still negative feelings, but a bit more balanced by some positive feelings.

Q.  Okay.  Did you notice any other symptoms when he first came to you?

A.  There were the behavioral problems that his foster parent described, that the case worker described.  He was lying.  He was stealing.  He was accused of acting

---

**2.**  Appellant testified that he did not do any of the things that the victim testified about.  In light of the issue before us, it is not necessary to discuss in detail the victim's version of what occurred.

out sexually in his previous foster home. He denied it at that time, but he acknowledged it later. And he had run away. He was—he would threaten to run away at the drop of a hat if things didn't go his way. Those kinds of things were happening.

Q. Based on your interviews with him and your assessment of his symptoms, did there come a time when you were able to render any type of diagnosis under the DSM–III, or Diagnostic Statistical Manual, in terms of what specific disorders he was suffering from?

A. Yes. I diagnosed him with major depression and at this point I would consider it recurrent. When I first diagnosed him, I considered it a single episode, but he has fluctuated. He has gotten better, not worse. So his depression does recur.

And also conduct disorder, and that has—that also fluctuates. Sometimes he really takes charge of himself and he lives up to his contracts and he cuts down on his lying, and there are other times where he just goes off and gets back into those behaviors, usually under stress.

Q. And would you be able to tell us to a substantial degree of psychological certainty whether these disorders that you have mentioned, major depression and conduct disorder, are consistent with him having been the victim of sexual child abuse?

A. Yes.

(Defense Counsel): Objection.

THE COURT: Basis?

(Defense Counsel): Very vague, be consistent with almost any kind of thing happening in the 12 years of this young man's life.

THE COURT: Rephrase.

BY (the prosecutor):

Q. These disorders that you noted in [the victim's] major depression and conduct disorder, could you testify to a substantial degree of psychological certainty that they

were, I guess basically caused by his being a victim of child sexual abuse?

(Defense Counsel): Objection.

THE COURT: Overruled.

THE WITNESS: I would say that they are strongly associated with his being a victim of child sexual abuse.

Q. And upon what facts and circumstances do you base that conclusion, that opinion?

A. Because of the way in which [the victim] presented his information to me. When he came in acting out, very angry, wasn't going to talk to me or to anyone else, and he was going to walk about and all of that.

(Defense Counsel): I object.

THE WITNESS: I'm giving the data.

(Defense Counsel): Excuse me, ma'am. I would object to this, what the doctor is testifying to now. Even though it's acting out behavior or what she's observed, that still comes out of the statement the child made and a basis for her conclusion.

THE COURT: No, it doesn't. Overruled.

Q. You may continue.

A. Okay. When he was showing these behaviors, I was dealing with his behaviors and with his feelings, and he started off telling me that he was behaving like this because I don't want to be here. And I asked him, since he didn't want to communicate with me, I said either draw, do you like to draw? Do you like to draw? Would you like to either draw or write about what's making you so angry? He decided to draw, and what he drew is about his father abusing him physically.

(Defense Counsel): Objection. Move to strike that.

THE COURT: I will sustain that objection.

Q. All right. Were there any other things that you noticed in terms of his actual behaviors that led you to your conclusion or opinion without telling us what exactly he said?

A. I can tell you about the behavior, but not without telling you what he said.

Q. Okay.

A. And it is that he told about his reason for abusing his younger brother sexually, he said—

(Defense Counsel): I would object, Your Honor. This is all coming under the statement, all of what he is saying interrelates, networking up to the fact the State is going to get to. The State said we're not presenting anything on the statement.

THE COURT: And you've got the ultimate opinion.

The witness was not permitted to finish her answer. The following transpired during cross examination:

Q. Doctor, briefly, you stated that originally when you saw [the victim], to you he was very, very angry; is that correct?

A. Yes.

Q. And when he first came to you last June, he was lying and stealing and running away then, correct?

A. Yes, he was.

Q. And up to the day, the present time, is he still angry?

A. He is angry, but not as angry as when I saw him first.

Q. But he is still lying, stealing and running away?

A. That—those behaviors happen periodically. He does regress.

Q. He does regress?

A. He doesn't run away.

Q. He's still lying and stealing?

A. He will lie, yes, primarily lie.

Q. And based on your expertise in the field of psychotherapy and family and child unit, would you say that any child that has been in four different foster homes and has lived in a motel and separated from his family, they would also be under extreme stress?

A. Severe.

## Hutton v. State

In *Hutton,* the defendant was convicted of child abuse by jurors who heard two State's experts opine that (1) the victim suffered from post-traumatic stress disorder (PTSD) that was caused by sexual child abuse, and (2) the victim's stress "is not in any way faked." The Court of Appeals held that each of these opinions should have been excluded. The first opinion was declared inadmissible because "the symptoms ... (of PTSD) are not reliable identifiers of the specific cause of the disorder." 339 Md. at 491, 663 A.2d 1289. The second was declared inadmissible because, "no matter how learned in his or her field of expertise, no expert is in a better position to assess the credibility of a witness than is the jury." 339 Md. at 503, 663 A.2d 1289. *Hutton,* therefore, prohibits counsel from (1) asking a witness directly whether he or she personally believes the testimony of another person, and (2) introducing expert testimony in a way that presents the trier of fact with an expert's assertion of personal belief that another person's testimony is true.[3] Nothing in *Hutton* however,

---

**3.** The decision to reverse Hutton's convictions was unanimous. Only three other judges, however, joined the majority opinion. In a concurring opinion joined by Chief Judge Murphy, Judge Rodowsky agreed that trial judges must exclude opinions by experts who present themselves as human lie detectors, but distinguished such opinions from opinions that are based on—and merely assume the truth of—the relevant historical facts supplied to the experts. Judge Rodowsky believes that experts should be permitted to express opinions on the basis of a patient's history as long as the experts "clearly describe history as history when stating the basis for their opinions." 339 Md. at 520, 663 A.2d 1289. That kind of expert testimony was held to be admissible in *Acuna v. State,* 332 Md. 65, 71, 629 A.2d 1233 (1993).

Judge Eldridge concurred in the result only, for the reasons set forth in the dissenting opinion in *State v. Allewalt,* 308 Md. 89, 111–125, 517 A.2d 741 (1986). *Allewalt* involved the admissibility of evidence that a rape victim was suffering from PTSD, offered to rebut the defense that the victim had consented to having intercourse with the defendant. The *Hutton* majority declared that *Allewalt* is consistent with the line of cases holding "that PTSD testimony is admissible only in rebuttal to refute evidence challenging the consistency of the victim's behavior with that of someone who has been raped or abused, ... as an aid to the jury's evaluation of the victim's credibility." 339 Md. at 506–507, 663 A.2d 1289.

prohibits an expert from opining that the child's behavioral problems are *consistent* with abuse.

### Opinions That Must Be Excluded

■  This opinion does not disturb the rule prohibiting one witness from characterizing the testimony of another witness. In fact, *Hutton* persuades us of the need to emphasize once again the importance of this prohibition.  Every witness is prohibited from testifying that, in his or her opinion, the testimony given by another witness is true.  *Bohnert v. State,* 312 Md. 266, 278–279, 539 A.2d 657 (1988).  Every witness is prohibited from testifying that, in his or her opinion, the testimony given by another witness is false.[4]  This prohibition applies during cross examination as well as direct examination. *Mutyambizi v. State,* 33 Md.App. 55, 61, 363 A.2d 511 (1976). It applies in civil cases as well as criminal cases.  *Globe Security Systems v. Sterling,* 79 Md.App. 303, 308, 556 A.2d 731 (1989).  It applies to non-expert testimony as well as to expert testimony.  *American Stores Co. v. Herman,* 166 Md. 312, 314–315, 171 A. 54 (1934).

In *Acuna v. State,* 332 Md. 65, 629 A.2d 1233 (1993), the Court of Appeals rejected a contention that this prohibition was violated by expert testimony that, "through history" (furnished by the victim's mother), connected the victim's PTSD to the crimes charged.  *Id.* at 71, 629 A.2d 1233.

---

4. This opinion does not modify in any way the rules of impeachment (and rehabilitation) by proof of a witness' general character for truthfulness and veracity.  See Md. Rules 5–404(a)(1)(C), 5–405, 5–608 and 5–616.  Any witness who testifies about another witness' character for veracity—whether by expressing a personal opinion or by presenting evidence of the other witness' reputation—is also prohibited from expressing an opinion about the truthfulness or falsity of particular testimony.  In *Knight v. House,* 29 Md. 194 (1868), the Court of Appeals held that "after the impeaching witness has testified that a party's general reputation for truth and veracity in the community where he lives is unfavorable;  he may be asked the question 'whether from that reputation, he, the witness, would believe him on oath, in a matter in which he was interested.' "  *Id.* at 198–199.  Nothing in *Knight* is inconsistent with the prohibition against expressing an opinion about the truth or falsity of particular testimony.

*Acuna,* however, is a case in which the reviewing court was persuaded that the jurors understood that the expert's diagnosis was based on the assumption that the history was true rather than on a personal belief in the truthfulness of any disputed fact. Both *Acuna* and *Hutton* require that judges and lawyers be alert to the distinction between the expert opinion that *assumes* the truthfulness of disputed testimony, and the expert opinion that *asserts* that the disputed testimony is true. The former is admissible.[5] The latter is not.

### Opinions That May Be Admitted

The opinion of an expert as to even the possibility, of the cause of a certain condition may frequently be of aid ... for when the facts tend to show ... the cause of the condition, the assurance of an expert that the causal connection is scientifically possible may be helpful in determining what are reasonable inferences to be drawn from the facts. *Langenfelder v. Thompson,* 179 Md. 502, 505, 20 A.2d 491 (1941). In *Langenfelder* and in *Hughes v. Carter,* 236 Md. 484, 486, 204 A.2d 566 (1964), the Court of Appeals held that a physician was entitled to express an opinion that the plaintiff's injuries could have resulted from an auto accident. In *Wantland v. State,* 45 Md.App. 527, 413 A.2d 1376 (1980), this court held that an expert was permitted to opine that a particular knife could have caused the victim's wounds. *Id.* at 543, 413 A.2d 1376. In *Simmons v. State,* 313 Md. 33, 542 A.2d 1258 (1988), the Court of Appeals reversed a murder conviction because the trial judge excluded expert testimony about the "consistency between the specific subjective belief testified to

---

5. Md. Rule 5–703. The expert can be asked a hypothetical question that assumes the truth of a material fact. "In such a situation the jury is aware of the premise upon which the opinion is based and can determine whether the assumption is valid." *Kruszewski v. Holz,* 265 Md. 434, 445, 290 A.2d 534 (1972). When the opinion is based on the patient's history, and that history was furnished to the expert prior to trial rather than in a hypothetical question, the trial judge must make sure that the opinion is expressed in a way that the trier of fact understands that the expert is not vouching for the accuracy of that history.

by Simmons and Simmons's psychological profile ..." *Id.* at 48, 542 A.2d 1258.

In *Ali v. State,* 314 Md. 295, 550 A.2d 925 (1988), the victim who survived a violent assault was impeached with inconsistent statements she made while in the hospital recovering from her injuries. Because she was under the influence of medication at the time these inconsistent statements were made, the State introduced expert testimony of what the drugs could do to a patient. The Court of Appeals explained why this evidence was admissible:

> At that point, the jury had at least two obvious options concerning the inconsistencies in [the victim's] statements: 1) she was lying, or 2) her ability to accurately recount the details of the event was adversely affected by the medication she had been given. The State was offering the testimony of an expert to show that these drugs *could,* and were known to, cause this effect upon a person such as [the victim]. This information was relevant, and potentially useful to the jury. A juror attempting to determine whether [the victim] was telling the truth when she said she was disoriented or "in and out of it" because of medication would obviously benefit from knowing as a scientific fact whether that medication could, or often did, produce such an effect. Proof that the medication was known to diminish the ability to respond coherently to questions was therefore relevant and admissible.

314 Md. at 309–310, 550 A.2d 925. *See also, Cook v. State,* 84 Md.App. 122, 139, 578 A.2d 283 (1990) (expert in the field of drug dealing entitled to describe "how such operations are normally or typically conducted."), and *Yount v. State,* 99 Md.App. 207, 219, 636 A.2d 50 (1994) (expert permitted to testify that it is "normal and very common" for abused children to recant their initial reports of child abuse.) The cause-effect opinion at issue in this case was properly received into evidence.

### Conclusion

■ We would reverse appellant's conviction if the expert had—directly or indirectly—asserted a belief in the truth of

the victim's testimony.[6]  We are persuaded, however, that the expert did no more than opine that there was a strong cause-effect relationship between child abuse and the disorders from which the victim was suffering.  It is true that the prosecutor should not have been required to rephrase the question about whether the victim's disorders "are consistent" with disorders found in children who have suffered sexual child abuse.  *Simmons, supra,* 313 Md. at 48, 542 A.2d 1258.  It is also true that the rephrased question did stray from the *Simmons* track.  The answer, however, "was entirely proper, and within the correct guidelines established by [our appellate courts]." *Ali, supra,* 314 Md. at 310, 550 A.2d 925 (1988).

In this case, proof of the victim's disorders generated serious questions about the truthfulness of his testimony.  The defense was entitled to argue that, because of those disorders, the victim's testimony should be rejected.  *Reese v. State,* 54 Md.App. 281, 289–291, 458 A.2d 492 (1983).  The State was entitled to guard against the risk that the trier of fact would commit an "untutored layman's error of dismissing as non-credible testimony that, in the arcane context of sexual child abuse, should not be so readily dismissed." *Yount, supra,* 99 Md.App. at 212, 636 A.2d 50 (1994).  The State's expert conceded that the victim's stress disorder could have been caused by separation from his family and by the fact that he had lived at a number of different locations.  The trier of fact was entitled to know that the victim's disorders were as consistent with child abuse as with false testimony.

**JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.**

---

**6.**  It is often stated that the trial judge has wide discretion to admit or exclude evidence.  *Yount v. State,* 99 Md.App. 207, 219, 636 A.2d 50 (1994); *Winkles v. State,* 40 Md.App. 616, 622–623, 392 A.2d 1173 (1978).  A trial judge does not, however, have discretion to make an erroneous ruling that results in the admission of incompetent and unfairly prejudicial expert testimony.  *Bohnert, supra,* 312 Md. at 279, 539 A.2d 657.